644 So.2d 504 (1994)
THE FLORIDA BAR, Complainant,
v.
Peter L. NILES, Respondent.
No. 81145.
Supreme Court of Florida.
October 27, 1994.
*505 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Jan Wichrowski, Bar Counsel, Orlando, for complainant.
Wm. J. Sheppard and D. Gray Thomas of Sheppard and White, P.A., Jacksonville, for respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by respondent attorney Peter L. Niles. Niles petitions for consideration of the findings and recommendations set forth in the referee's report. The Florida Bar cross-petitions for review of the referee's recommended sanction that Niles be suspended from the practice of law for one year with proof of rehabilitation required prior to reinstatement. The Florida Bar is seeking disbarment. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee found that in 1990, Niles was appointed by the court as a special public defender to represent defendant Deidre Hunt in a first-degree murder case. On September 13, 1993, Niles' client, Ms. Hunt, was placed in Broward Correctional Institution (BCI) pursuant to her guilty plea to first-degree murder, for which she received the death penalty. State of Florida Department of Corrections' rules prohibit media interviews of such inmates during the first two to three weeks of their initial orientation. When media interviews are allowed, they must be personally approved by the BCI superintendent.
On September 21, 1993, Niles contacted the correctional superintendent and requested permission for his access to Ms. Hunt. He advised the superintendent that, as Ms. Hunt's counsel, he had made arrangements with the prosecutor and the judge to videotape Ms. Hunt at BCI regarding testimony concerning her codefendant. Niles indicated he would bring a law clerk and a cameraman to assist with the videotaping. The superintendent approved the request for a permissible attorney-client visit set for September 26, 1993.
On September 26, Niles arrived at BCI with a television reporter for the program "A Current Affair," as well as a cameraman. The superintendent was not present. Niles failed to clarify that the individuals with him were not the ones authorized by the superintendent. Security procedures of BCI were breached by Niles since only the minimal security required for attorney-client consultations was present during the media interview.
Although Ms. Hunt had been previously advised to expect her statement to be taken for the court, she was advised at the beginning of the interview that she was being taped for "A Current Affair." Niles further told her that he had not received any money from the interview and that she could expect no payment for the interview.
As broadcast on television, the interview, entitled "Deadly Deidre," included admissions from Ms. Hunt and excerpts from a videotape which showed Ms. Hunt shooting and killing Kevin Ramsey. The interview took place while Ms. Hunt's appeal was pending.
During the referee's hearing, Niles testified that he received $5,000 from "A Current Affair" based solely on negotiations occurring five to six months before the interview. He further stated that he was to receive the fee only if the interview was aired.
The referee's findings were in part as follows.
(1) Respondent lied to prison officials and to his client regarding the nature of the September 26, 1990 interview.
*506 (2) Respondent lied by denying his receipt of a $5,000 fee from "A Current Affair." Respondent, as a special public defender, was compensated by order of the court but failed to advise the court of the $5,000 fee received from "A Current Affair." Only after negotiations with the assistant state attorney did respondent deliver a $5,000 check to the County of Volusia. Upon initial delivery of the $5,000 check, it was returned for insufficient funds.
(3) Respondent failed to advise his client of the planned interview with "A Current Affair" and, thus, obtained the interview of his client without her informed consent. Further, in the interview, respondent's client was cast in an exploitative and negative manner.
(4) Respondent revealed client information without his client's consent by obtaining her interview without her waiver, authorization, or permission.
(5) Respondent acquired a proprietary interest in his client's case by contracting with "A Current Affair" to receive a $5,000 fee in return for an interview with his client.
The referee recommended that Niles be found guilty of violating the following provisions of the Rules Regulating the Florida Bar: Rule 3-4.3 (misconduct and minor misconduct) of the Rules of Discipline; Rules 4-1.2(a) (scope of representation), 4-1.4 (communication), 4-1.5 (fees for legal services), 4-1.6(a) (confidentiality of information), 4-1.7(b), 4-1.8(b), (d), (i), 4-1.9(b) (conflict of interest), 4-1.15 (safekeeping property), 4-2.1 (adviser), 4-4.1(a) (truthfulness in statements to others), 4-4.4 (respect for rights of third persons), and 4-8.4(b), (c), (d) (misconduct) of the Rules of Professional Conduct.
Niles contends that the referee's findings of misconduct are not supported by legally-sufficient evidence. He asserts that the findings do not meet the standard of proof "by clear and convincing evidence." In a referee trial of a prosecution for professional misconduct, the Bar has the burden of proving its accusations by clear and convincing evidence. The Florida Bar v. Rayman, 238 So.2d 594 (Fla. 1970). However, this court's review of a referee's findings of fact is not in the nature of a trial de novo. The responsibility for finding facts and resolving conflicts in the evidence is placed with the referee. The Florida Bar v. Hoffer, 383 So.2d 639 (Fla. 1980). The referee's findings "should not be overturned unless clearly erroneous or lacking in evidentiary support." The Florida Bar v. Wagner, 212 So.2d 770, 772 (Fla. 1968); The Florida Bar v. Neely, 502 So.2d 1237 (Fla. 1987). Further, rule 3-7.6(k)(1)(A) of the Rules Regulating The Florida Bar provides that the referee's findings of fact as to items of misconduct charged "shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding." See The Florida Bar v. Hooper, 509 So.2d 289 (Fla. 1987).
Here, the referee found that Niles engaged in extremely serious violations of the Rules Regulating the Florida Bar with lies and misrepresentations to his client, as well as to BCI, the public, and the legal profession as a whole through a sensational and derogatory media interview.
The referee's finding is supported by competent, substantial evidence and was not reached erroneously. We therefore approve the referee's findings of fact.
Niles claims that should he be found in violation of any of the rules alleged before the referee, a one-year suspension with proof of rehabilitation is excessively severe. Niles claims that the proper disciplinary action for isolated instances of neglect, lapses of judgment, or technical violations is a public reprimand.
In the closing argument before the referee, the Bar argued that nothing less than a one-year suspension from The Florida Bar would satisfy the goals of attorney discipline. Upon full review by the Board of Governors of the Florida Bar, the Bar now argues that disbarment is the appropriate discipline.
In reviewing a referee's recommendations for discipline, our scope of review is broader than that afforded to findings of fact because it is our responsibility to order the appropriate punishment. The Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla. 1989). However, a referee's recommendation on discipline is afforded a presumption of correctness *507 unless the recommendation is clearly erroneous or not supported by the evidence. See The Florida Bar v. Lipman, 497 So.2d 1165, 1168 (Fla. 1986); The Florida Bar v. Poplack, 599 So.2d 116 (Fla. 1992).
We have held that bar disciplinary proceedings must serve three purposes: first, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer; second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation; and third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations. See The Florida Bar v. Lord, 433 So.2d 983, 986 (Fla. 1983); The Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970).
In supporting its argument for disbarring respondent, The Bar cites The Florida Bar v. Crabtree, 595 So.2d 935 (Fla. 1992), in which this court disbarred an attorney for engaging in misrepresentations and conflicts of interest. The Bar also cites The Florida Bar v. Merwin, 636 So.2d 717 (Fla. 1994), in which this court disbarred an attorney because the attorney lied under oath and failed to properly represent a client. The Bar argues that Crabtree, Merwin, and the instant case are similar because the referee found the attorney guilty of misrepresentation and deceit in each situation.
We find that the cases cited by the Bar are factually different from the instant case. Namely, in both Crabtree and Merwin, the attorney who was subsequently disbarred had received prior discipline for acts involving moral turpitude and dishonesty. Although Niles has been involved in previous disciplinary actions before The Florida Bar, none have involved moral turpitude. While we find this behavior by Niles to be egregious, there does not seem to be a pattern of such behavior on his part. Further, we do not believe there is a sufficient reason in this instance to reject the referee's disciplinary recommendation of a one-year suspension pursuant to the Bar's request.
We therefore approve the recommendation of the referee. Peter L. Niles is hereby suspended for one year with proof of rehabilitation required prior to reinstatement.
Finally, we specifically reiterate that we find respondent's conduct detrimental to the public, his profession, and the administration of justice in the courts. We expect members of The Florida Bar not to engage in conduct in any case, including cases which attract substantial media attention, which violates the Rules Regulating The Florida Bar in the ways found by the referee in this case. Our approval of the referee's recommended one-year suspension in this instance, in which the referee followed The Florida Bar's counsel's recommendation, is not to be read as an indication that similar conduct will receive any discipline less than disbarment for respondent or any other member of The Florida Bar in any future proceedings.
The suspension will be effective 30 days from the filing of this opinion so that Niles can close out his practice and protect the interests of existing clients. If Niles notifies this court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, this court will enter an order making the suspension effective immediately. Niles shall accept no new business from the date this opinion is published until he is reinstated. Judgment is entered for The Florida Bar against Peter L. Niles for costs in the amount of $3,052.97, for which sum let execution issue.
It is so ordered.
THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.
GRIMES, C.J., and KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON and SHAW, JJ., dissent.