699 So.2d 1357 (1997)
THE FLORIDA BAR, Complainant,
v.
Henry J. MARTOCCI, Respondent.
No. 88180.
Supreme Court of Florida.
October 2, 1997.
*1358 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and Rose Ann Digangi-Schneider, Frances R. Brown and Eric M. Turner, Bar Counsel, Orlando, for complainant.
James R. Dressler, Cocoa Beach, for respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by respondent Henry J. Martocci. We have jurisdiction. Art. V, § 15, Fla. Const. Although we find the conduct involved herein to be patently unprofessional, we approve the referee's report and recommendation that respondent be found not guilty of the formal ethical violations alleged in The Florida Bar's complaint against him.
The Florida Bar filed a two-count complaint against respondent, alleging the following violations:
Count IViolation of rule of professional conduct 4-8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation);
Count IIViolation of rule of professional conduct 4-8.4(d) (prohibiting conduct prejudicial to the administration of justice).
The referee, Judge Cynthia G. Angelos, filed her report on December 5, 1996, after holding a pretrial telephone conference on October 29 and a final evidentiary hearing on November 8, 1996. Judge Angelos recommended that respondent be found not guilty of both allegations, and that each party bear its own costs. The Bar petitioned this Court for review of the referee's report, claiming that based on the undisputed facts, the referee wrongly found respondent not guilty of the allegations. The following facts are from Judge Angelos' report.

FACTS
Respondent represented the former wife in a child custody and support case. J. Scott Lanford represented the former husband in the same action. Lanford scheduled the deposition of Dr. Bonnie Slade, a psychologist, for Monday, April 24, 1995, at 8:45 a.m. at Dr. Slade's office. Present for the deposition were respondent, Lanford, respondent's client, and her new husband. Two days earlier on Saturday, April 22, Lanford faxed a notice of deposition of Dr. Whitacre to be taken at Lanford's office at 6:30 p.m. on Monday, April 24. Respondent's office was closed on Saturday.
*1359 Dr. Slade's deposition was reported by Stephanie McGraw using stenographic notes and a tape recorder. The deposition concluded after approximately fifteen minutes when Dr. Slade advised both attorneys that she had a 9 a.m. appointment. Lanford then stated that the deposition would conclude at a later time, after which Dr. Slade left the room. Lanford then addressed respondent, saying, "You are aware we have a deposition of Dr. Whitacre in my office tonight." When respondent stated that he was not aware of the deposition, Lanford replied, "Six-thirty in my office. Be there. Thank you."
After leaving the room, respondent approached Lanford from the rear, put his hand on his shoulder, and said to him, "F___ you." Lanford replied, "I'm sorry, what did you say?" Respondent then called Lanford "A___hole," whereupon Lanford said, "Say it again." After respondent repeated the epithet, Lanford advised Ms. McGraw, the court reporter, to include the post-deposition comments in the transcript to be presented to the trial court. Ms. McGraw had allowed her tape recorder to continue during the parties' exchange, but only picked up the term "a___hole." Dr. Riebsame, a psychologist working in the same office as Dr. Slade, testified before the grievance committee that he witnessed the confrontation between the two attorneys and that respondent either pushed or pointed at Lanford's chest.
Ms. McGraw and Lanford testified that while they were in the parking lot subsequent to Dr. Slade's deposition, respondent said words to the effect of, "Hey looney, when did you send the subpoena?" McGraw also testified that just before Dr. Whitacre's deposition that evening, respondent pointed his finger at her and said to his client, "I'm going to get that woman if it's the last thing I do." Respondent objected to McGraw's presence as the court reporter for Dr. Whitacre's deposition based on his contention that she and Lanford had fabricated a portion of Dr. Slade's deposition taken that morning. Respondent testified that the portion he was referring to were those post-deposition comments which McGraw included in the deposition transcript. At the beginning of Dr. Whitacre's deposition, respondent stated on the record that McGraw had notarized a partially false and fraudulent transcript of statements never made. Respondent later testified that he was again referring to statements never made during the course of the deposition. Respondent subsequently made the same allegation, accompanied by the same qualification, in supplemental objections to Dr. Slade's deposition transcript filed with the trial court.
Respondent later filed a grievance with the Bar against Lanford. In his grievance, respondent stated that at no time either during or after Dr. Slade's deposition did he utter the term "f___ me" as reflected in the deposition transcript. At the time respondent made the comments, he was under stress because of a medical condition and the late scheduled deposition with Dr. Whitacre conflicted with time he needed to spend with his girlfriend's sick mother. Respondent also testified that Lanford accused him of being a liar and conspiring with his client to deny return of her children to her former husband.

REFEREE'S FINDINGS OF FACT
In bar discipline cases, an attorney may be found guilty only if the referee concludes that the alleged misconduct was proven by clear and convincing evidence. Florida Bar v. Neu, 597 So.2d 266, 268 (Fla.1992). Further, a referee's findings of fact carry a presumption of correctness which will be upheld on review "unless clearly erroneous or lacking in evidentiary support." Florida Bar v. Stalnaker, 485 So.2d 815, 816 (Fla.1986); Florida Bar v. Neely, 502 So.2d 1237 (Fla. 1987). If the referee's findings "are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992); Florida Bar v. Weed, 559 So.2d 1094 (Fla.1990). Since the Bar is challenging the referee's findings of fact, it has the burden of showing that the referee's report is clearly erroneous or unsupported by the record. Florida Bar v. Lanford, 691 So.2d 480, 481 (Fla.1997) (citing Neu, 597 So.2d at 268).
*1360 Based on the above facts, the referee concluded as follows:
While the court cannot condone the actions of Mr. Martocci in this case, in reviewing the totality of the circumstances including, but not limited to, the personal circumstances of the respondent at the time of the alleged actions, the health of the respondent including his physical and mental health, and, most importantly, the conduct of opposing counsel in this case, the Referee finds that it has not been proven by clear and convincing evidence that the conduct rises to a level of violation of Rule 4-8.4(c) and 4-8.4(d).
(Emphasis added.) Although the Bar offered contrary evidence which arguably presented a different view of the events, the referee resolved the debatable issues in respondent's favor. See Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994) (reaffirming that "responsibility for finding facts and resolving conflicts in the evidence is placed with the referee"). The referee also considered respondent's physical problems at the time of the incident, including a recent mild stroke, and the fact that his fiancee's mother had been diagnosed with Alzheimer's disease, thus necessitating the fiancee's extended absence from Florida to care for her mother. Finally, the referee considered Mr. Lanford's conduct in determining whether the Bar had proven by clear and convincing evidence that respondent committed the alleged misconduct.
We have recognized that the referee "is the person most well-equipped to judge the character and demeanor of the lawyer being disciplined." Florida Bar v. Rood, 622 So.2d 974, 977 (Fla.1993). While Judge Angelos acknowledged that she did not approve of respondent's conduct, she concluded that based on all the evidence before her, the Bar failed to prove clearly and convincingly that respondent committed the alleged misconduct. Judge Angelos apparently accepted respondent's explanation that he was challenging the implication that he made his comments to Lanford during the deposition rather than in the hallway after the deposition ended. The record provides some support to respondent's version of events since his exchange with Lanford appears at the end of Dr. Slade's deposition transcript, shortly after the court reporter parenthetically noted that "Dr. Slade left the deposition room," but with no indication that any time lapsed or that the attorneys were some distance removed from the deposition site, out of the room and down the hallway.
As noted in our opening paragraph we find the conduct of the lawyers involved in the incident giving rise to these proceedings to be patently unprofessional. We would be naive if we did not acknowledge that the conduct involved herein occurs far too often. We should be and are embarrassed and ashamed for all bar members that such childish and demeaning conduct takes place in the justice system. It is our hope that by publishing this opinion and thereby making public the offending and demeaning exchanges between these particular attorneys, that the entire bar will benefit and realize an attorney's obligation to adhere to the highest professional standards of conduct no matter the location or circumstances in which an attorney's services are being rendered.
Accordingly, the Bar has failed to carry its burden that the referee's findings of fact are clearly erroneous or unsupported by the record. Thus, we deny the Bar's petition for review and approve the referee's report. We also approve the referee's recommendation that each party bear its own costs in this proceeding.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.