733 So.2d 975 (1999)
THE FLORIDA BAR, Complainant,
v.
Albert L. CARRICARTE, Respondent.
No. 90,604.
Supreme Court of Florida.
April 8, 1999.
*976 John F. Harkness, Jr., Executive Director and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and Cynthia Ann Lindbloom, Bar Counsel, Miami, Florida, for Complainant.
Albert L. Carricarte, pro se, Miami, Florida, for Respondent.
PER CURIAM.
We have for review a referee's report finding ethical breaches by respondent, Albert L. Carricarte, and recommending disciplinary measures. We have jurisdiction. Art. V, § 15, Fla. Const.
From December 1991 through December 1994, respondent was employed as in-house counsel for two Florida corporations owned and operated by members of respondent's family. After a formal hearing, the referee found that subsequent to his termination as in-house counsel for the companies, respondent began sending a series of faxed letters to his brother, Michael Carricarte, Sr., the chief executive officer of the companies, which stated respondent's intention to disclose the companies' alleged violations of software copyright laws to the Software Publishers Association and federal authorities, reflected respondent's position that his termination as in-house counsel terminated the attorney-client privilege between himself and the companies, and outlined numerous felonies alleged to have been committed by Michael and others employed by the companies. The referee also *977 found that respondent wrote to the Ohio Department of Insurance suggesting that it investigate a discrepancy in the companies' reporting.
Further, the referee found that following his termination, respondent misappropriated trade secrets from the companies and disseminated these trade secrets to insurance companies, insurance agents, and others with whom the companies had business relationships. Specifically, respondent sent a fax to an insurance agent in Mexico captioned "Mike Carricarte's illegal biggest general agents in Mexico" and which included the names, addresses, and telephone numbers of "Mike Carricarte, Sr.'s principal agents in Mexico." During a hearing in relation to a suit filed by the companies against respondent and a codefendant for stealing confidential trade secrets and breaching their confidentiality agreements with the companies, respondent admitted the confidential nature of this information. The referee also found that at another hearing with respect to the lawsuit between respondent and the companies, respondent stated that based upon his personal knowledge, the companies, the principals, or both had engaged in tax evasion, insurance fraud, conspiracy and other criminal conduct.
Finally, while employed as in-house counsel, respondent handled a real estate closing for the companies and was given approximately $110,000 to hold in trust. The referee found that after his termination, respondent threatened not to return these funds and to sell or reveal a database developed by the companies to competitors unless he received $25,000 and that under duress, the companies gave respondent that amount, which became Respondent's "severance pay."
Based on the above-described findings, the referee recommended that respondent be found guilty of violating rule 4-1.6(a)("[a] lawyer shall not reveal information relating to representation of a client... unless the client consents after disclosure to the client"), rule 4-1.6(e)("[w]hen disclosure is mandated or permitted, the lawyer shall disclose no more information than is required to meet the requirements or accomplish the purpose of this rule"), and rule 5-1.1(a)("[m]oney ... entrusted to an attorney for a specific purpose ... is held in trust and must be applied only to that purpose") of the Rules Regulating The Florida Bar. The referee recommended respondent be suspended for ninety days followed by three years' probation and that as a condition of probation, respondent submit to an evaluation by Florida Lawyer's Assistance, Inc. (F.L.A.) and comply with any recommended course of treatment. Respondent sought review of the referee's findings and recommendations.

I. The Referee's Findings of Fact and Recommendations as to Guilt.
Respondent first argues that the referee erred in finding that he threatened to sell or reveal the companies' database unless he was given $25,000 of the money held in trust by him for the companies. In order to successfully attack this finding, respondent must demonstrate "that there is no evidence in the record to support [the referee's] findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996); see also Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998)(quoting same). Respondent has not met this burden.
At the formal hearing, respondent's brother, Michael Carricarte, Sr., testified that the $25,000 "severance pay" agreement was extorted. Specifically, he testified and stated in an affidavit that respondent threatened to keep all of the $110,000 held in trust or reveal or sell the companies' database to competitors or both if he was not given $25,000. Michael, Sr.'s son, Michael Carricarte, Jr., also testified and submitted an affidavit to this effect. The testimony of Michael, Sr. as well as that of Michael, Jr. was corroborated to some extent by the testimony and affidavit of Byron *978 Williams, a former employee of the companies.
Respondent essentially argues that Michael, Sr.'s and Michael, Jr.'s statements at the hearing in this case were lies and that, as the severance pay agreement between respondent and Michael Carricarte, Sr. shows, respondent was specifically and legitimately authorized to retain the $25,000 from his trust account.
As is evident from Respondent's argument, his attack on the referee's finding boils down to a question of credibility. However, "[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991); see also Florida Bar v. Hayden, 583 So.2d 1016, 1017 (Fla.1991)(stating that where testimony conflicts, referee is charged with responsibility of assessing credibility based on demeanor and other factors). We find no basis in the record for finding that the referee's assessment of credibility in this case was incorrect and therefore uphold the challenged finding.
Respondent next argues that the referee's finding that he revealed confidential information in excess of that necessary for the defense of the litigation between him and the companies is erroneous because none of the circuit or district court judges involved in that litigation found that his defense of the litigation involved any wrongdoing and never referred anything to The Florida Bar for disciplinary action. Notably, however, respondent does not contend that the propriety of his actions in defending that litigation was ever raised during those proceedings or specifically addressed by any of the judges involved.
In any event, rule 3-4.4 of the Rules Regulating The Florida Bar clearly states that "the findings, judgment, or decree of any court in civil proceedings [shall not] necessarily be binding in disciplinary proceedings." Thus, even if the issue had been specifically raised and a judge had specifically found no wrongdoing and refused to refer this matter to the Bar, such action would not prevent the complainant in this case, Respondent's brother, from filing a complaint with the Bar, nor would it prevent the Bar from investigating that complaint and taking the appropriate action. See Theriault v. J.S. & G. Asphalt, Inc., 617 So.2d 437 (Fla. 4th DCA 1993). Accordingly, we find no error.

II. The Referee's Recommendations as to Discipline.
We turn now to the referee's recommended discipline. Our scope of review over disciplinary recommendations is broader than that afforded to findings of fact because we bear the ultimate responsibility to determine the appropriate discipline. See Florida Bar v. Rubin, 709 So.2d 1361, 1364 (Fla.1998). As noted above, the referee recommended that respondent be suspended for ninety days followed by three years' probation. Additionally, the referee recommended that as a condition of Respondent's probation he be required to submit to an evaluation by F.L.A. within the first thirty days of probation and that he comply with any recommended course of treatment.
The only aspect of discipline challenged by respondent is the requirement that he submit to the F.L.A. evaluation. He argues that he had no notice that the Bar was seeking the imposition of this element of discipline until after both parties had rested at the final hearing and thus he had no opportunity to defend against it. Accordingly, he argues, the referee's recommendation in this regard is a violation of due process.
An attorney is entitled to due process in disciplinary proceedings. See Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); In the Matter of Sullivan 283 Ala. 514, 219 So.2d 346 (1969). *979 As to the discipline imposed, due process requires that the attorney be permitted to "explain the circumstances of the alleged offense and to offer testimony in mitigation of any penalty to be imposed." Florida Bar v. Cruz, 490 So.2d 48, 49 (Fla. 1986); see also Florida Bar v. Fussell, 179 So.2d 852, 854 (Fla.1965). Here, despite Respondent's argument, it is clear that he was aware that his mental state was in question and that he had an opportunity to offer evidence on this issue and simply failed to do so.
First, contrary to respondent's claim of complete surprise, his testimony at the hearing revealed that he was aware that his mental state had come into question. More importantly, however, there were separate hearings held as to guilt and discipline, and respondent was, in fact, aware of the Bar's recommendation of an evaluation prior to the hearing on discipline. The hearing as to guilt was held June 4, 1998, and at the end of this hearing, the Bar specifically stated that it was seeking a ninety-day suspension, probation, and an evaluation by F.L.A. Thus, respondent had notice of the Bar's intention to seek an evaluation prior to the hearing on discipline, which took place almost a month later on July 1, 1998. Despite the fact that respondent had clear notice that an evaluation was being sought, ample time for preparation of a defense, and an opportunity to present any evidence he felt was appropriate, he presented no evidence to refute the Bar's recommendation. Accordingly, we find no due process violation. See Florida Bar v. Daniel, 626 So.2d 178 (Fla.1993)(holding that attorney's voluntary choice not to take advantage of an opportunity to be heard does not violate due process).
Respondent also argues that the Bar failed to present any evidence that would support the referee's recommendation of an evaluation. However, respondent admits that he faxed to his brother a number of messages of a strange and threatening nature. One such message stated, "Yesterday, I played at Louie's grave. This morning, in the dark on my knees, I recited the prayers for the dead, made peace with God, and prepared for Armageddon." Additionally, respondent's brother Michael testified that, at a luncheon meeting, respondent put his hand on a zippered gun case and told Michael that it was a "cocked, loaded 45." Respondent's response to that testimony at the hearing was: "It was actually a Glock." Michael also testified that he believed respondent had a "chemical imbalance" and was "not normal," that respondent carried his gun twenty-four hours a day and frequently flaunted the gun at the work place, and that respondent had made death threats against him and his family. Additionally, Byron Williams, a former employee of the companies, testified that respondent always had his gun with him and that respondent told him that he never went anywhere without it. Mr. Williams also testified that Michael, Sr. and Michael, Jr. told him about the death threats made by respondent. Clearly, this testimony established a sufficient basis for the referee's recommendation that respondent be required to submit to a mental examination as a condition of probation. Accordingly, we approve the referee's recommendation as to discipline.
Albert L. Carricarte is hereby suspended from the practice of law for ninety days followed by three years' probation. The ninety-day suspension will be effective thirty days from the filing of this opinion so that Carricarte can close out his practice and protect the interests of existing clients. If Carricarte notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Carricarte shall accept no new business from the date this opinion if filed until the suspension is complete.
Additionally, as a condition of Respondent's probation he is required, at his own *980 expense, to submit to an evaluation by Florida Lawyer's Assistance, Inc., within the first thirty days of probation and must comply with any recommended course of treatment. We also require that the evaluation be provided to The Florida Bar for review and, if treatment is recommended, that Carricarte ensure that his therapist submits quarterly reports to The Florida Bar during the probationary period. The reports shall confirm Carricarte's active participation in treatment and shall evaluate his ability to engage in the practice of law. Should a report indicate that Carricarte is incapable of practicing law, the Bar shall take whatever action it deems appropriate. However, if no treatment is recommended, none shall be required. Judgment for costs is hereby entered against Carricarte in the amount of $3,959.20, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.