771 So.2d 1131 (2000)
THE FLORIDA BAR, Complainant,
v.
Richard Lee BUCKLE, Respondent.
No. SC94027.
Supreme Court of Florida.
October 12, 2000.
*1132 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and Brett Alan Geer, Assistant Staff Counsel, Tampa, Florida, for Complainant.
Richard Lee Buckle, pro se, Bradenton, Florida, and Layon F. Robinson, II, Bradenton, Florida, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Richard Lee Buckle. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we affirm the referee's findings of fact and conclusions of guilt, but we reject his recommendation regarding discipline and find that a public reprimand is the appropriate sanction for the misconduct at issue.
During his representation of Donald Spaulding, a criminal defendant who had been arrested for battery and false imprisonment, respondent Buckle contacted the alleged victim of the crimes, Lydia Gibas, both by telephone and by letter. During the first telephone contact, Gibas terminated the call after learning that Buckle represented the defendant. The second telephone contact ended similarly, with Gibas informing Buckle that she did not wish to speak to him. Immediately after the second phone call, Buckle transmitted a letter to Gibas and attached various religious materials to that letter. Receipt of this letter prompted Gibas to file a bar complaint against Buckle.
At the formal hearing in this matter, Gibas testified that the letter was humiliating and disparaged her character and that it caused her to consider abandoning the criminal complaint against Spaulding. The referee found that the letter was "objectively humiliating and intimidating to a reasonable person standing in Ms. Gibas' place" and that it had no substantial purpose other than to embarrass, intimidate, or otherwise burden Gibas. The referee also found that although Gibas was offended by the religious materials Buckle had attached to the letter, he had included those materials simply to fulfill his convictions as a religious person. The referee further stated his opinion that "the dissemination of religious materials, though not prohibited, should be carefully reviewed by all senders of such material, and professional discretion used concerning this type of dissemination."
Based on the factual findings described above, the referee concluded that Buckle had violated Rule of Professional Conduct 4-4.4 (lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person); rule 4-8.4(a)(lawyer shall not violate Rules of Professional Conduct); and rule 4-8.4(d)(lawyer shall not engage in conduct prejudicial to administration of justice, including disparaging, humiliating, or discriminating against litigants, jurors, witnesses, and others on any basis).[1] In aggravation, the referee considered Buckle's age of fifty-two, his two prior admonishments, his substantial experience in the practice of law, a pattern of misconduct,[2] multiple offenses, and his refusal to acknowledge the wrongful nature of his conduct. Additionally, the referee commented that throughout the proceedings, Buckle *1133 attempted to portray the complaint against him as one of religious persecution and failed to see how his actions affected Gibas and the administration of justice. The referee recommended that Buckle be suspended for thirty days, be required to write letters of apology to Gibas and another woman to whom Buckle had sent a similar letter, and be placed on probation for two years during which he may not send religious materials in connection with his practice of law to any opposing litigant, witness, or attorney for same. Buckle now seeks review of the referee's report and recommendation.
Buckle argues that his conduct did not violate any ethical rules and was, in fact, required by his duty to competently and zealously represent his client. He argues that contrary to the referee's finding, the letter he sent to Gibas had a substantial purpose other than to intimidate or disparage her. This purpose, he contends, was to gain additional information, to find out the position of the victim with respect to prosecution, and to discover whether or not the victim intended to pursue prosecution of the case. The referee expressly rejected this explanation as lacking credibility.
The referee's credibility determination in this regard is entitled to deference. See Florida Bar v. Fredericks, 731 So.2d 1249, 1251 (Fla.1999) (stating that "the referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect"). The referee found that Buckle's explanation was not credible "in that no reasonable attorney would ever expect such a letter to actually be answered by the purported victim of a crime." Indeed, just before Buckle transmitted the letter, Gibas had specifically informed him that she did not wish to have any contact with him. Thus, even more so under the circumstances of this case, it would be illogical for Buckle to have genuinely expected a voluntary response from Gibas after having been clearly advised that his contact was totally unwelcome.
The referee found that the letter on its face was objectively humiliating and intimidating to a reasonable person standing in Gibas' place. He found that the intent of the letter was obvious and that its intent was solely to "embarrass, intimidate, or otherwise burden Ms. Gibas," by "threatening to explore and exploit the most personal and important aspects and relationships in [her] life, to hold these aspects of her life up to public scrutiny, to expose her." The referee's finding in this regard is supported by competent substantial evidence.
Most importantly, the letter itself was introduced into evidence and its tone and content are both clear and direct. In it, Buckle poses numerous questions and includes many comments directed to Gibas' credibility, morality, and judgment and threatens to "leave no stone unturned" if she continues to press the charges. He essentially threatens to take her away from her job and her children and to expose her to ridicule, contempt, and hatred. He also threatens to expose and delve into the circumstances surrounding the murder of one of her family members. As the referee found, the obvious intent of these threats, comments, and inquiries was to intimidate Gibas into abandoning her criminal complaint against Spaulding.
The heart of this matter revolves around the lines of propriety involved in the conflict between zealous advocacy and ethical conduct. We must never permit a cloak of purported zealous advocacy to conceal unethical behavior. At the same time, we must also guard against hollow claims of ethical impropriety precluding proper advocacy for a client. This Court has recognized that "ethical problems may arise from conflicts between a lawyer's responsibility to a client and the lawyer's special obligations to society and the legal system.... `Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the *1134 basic principles underlying the rules.' "Florida Bar v. Machin, 635 So.2d 938, 940 (Fla.1994) (quoting the Preamble to the Rules of Professional Conduct).
Certainly, the principles underlying the rules include basic fairness, respect for others, human dignity, and upholding the quality of justice. Zealous advocacy cannot be translated to mean win at all costs, and although the line may be difficult to establish, standards of good taste and professionalism must be maintained while we support and defend the role of counsel in proper advocacy. In corresponding with persons involved in legal proceedings, lawyers must be vigilant not to abuse the privilege afforded them as officers of the court. A lawyer's obligation of zealous representation should not and cannot be transformed into a vehicle intent upon harassment and intimidation.
In representing Spaulding, Buckle was certainly entitled and obligated to raise issues regarding Gibas' credibility and to attempt to discover the facts and circumstances surrounding the alleged crime; however, he was not entitled to use such inquiries as a ruse for threatening, disparaging, and humiliating Gibas into abandoning her complaint. Intimidating her for no other reason than to influence her to abandon the criminal charges and with no reasonable expectation of gaining any pertinent information is patently unfair and is clearly prejudicial to the administration of justice. Buckle's threats involving her employment, invasion of medical privacy, family, and security are simply beyond the bounds of proper advocacy. Accordingly, we uphold the referee's findings of fact and conclusions of guilt.
We disagree, however, with the referee's recommendation regarding discipline. As noted above, the referee recommended that Buckle be suspended for thirty days, be required to write letters of apology, and be placed on probation for two years during which he would be restricted from sending religious materials in connection with his practice of law. In contrast with a review of the referee's findings of fact, which should be upheld if supported by competent substantial evidence, this Court has a broader scope of review regarding discipline because it bears the ultimate responsibility of ordering the appropriate sanction. See Florida Bar v. Carricarte, 733 So.2d 975, 978 (Fla. 1999). In light of several cases involving similar conduct, we find that a public reprimand is the appropriate sanction for Buckle's misconduct in this case. Florida Bar v. Sayler, 721 So.2d 1152 (Fla.1998) (imposing a public reprimand where an attorney sent a frightening letter to opposing counsel in a workers' compensation matter which referenced the murder of a workers' compensation attorney and attached a copy of a newspaper article regarding the murder); The Florida Bar v. Uhrig, 666 So.2d 887 (Fla.1996) (imposing a public reprimand where an attorney sent a humiliating, embarrassing, and disparaging letter to his client's ex-husband); Florida Bar v. Johnson, 511 So.2d 295 (Fla. 1987) (imposing a public reprimand where an attorney sent several letters to a client with whom he had a fee dispute stating that God told him that the client would be visited with a variety of biblical curses unless he paid the money he owed).
Richard Lee Buckle is hereby publicly reprimanded for his violation of the Rules Regulating The Florida Bar. Judgment for costs in the amount of $4,404.99 is entered against respondent and in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, FL 32399, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, J., dissents as to discipline.
NOTES
[1] The referee did not expressly state whether it was the letter itself, the religious materials, or both that violated these rules. We find no violation with regard to the religious materials in and of themselves; however, we agree with the referee that an attorney should carefully exercise his or her professional judgment and discretion with regard to the dissemination of religious materials enclosed with legal correspondence.
[2] In aggravation only, the referee considered the testimony of Sheree Weisenberger, who had received a similar letter and calls from Buckle. Weisenberger was the alleged victim of another similar crime perpetrated by Buckle's client, Donald Spaulding.