791 So.2d 1074 (2001)
THE FLORIDA BAR, Complainant,
v.
Henry John MARTOCCI, Respondent.
No. SC95315.
Supreme Court of Florida.
April 26, 2001.
Rehearing Denied August 3, 2001.
John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Division Director, Tallahassee, FL; and Frances R. Brown-Lewis, Bar Counsel, Orlando, FL, for Complainant.
Henry J. Martocci, pro se, Rockledge, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by respondent Henry John Martocci (Martocci). We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons stated herein, we affirm the referee's findings of fact, *1075 conclusions of guilt, and recommended discipline.
On April 14, 1999, based on Martocci's representation of Francis Berger in a dissolution of marriage and child custody action and a child dependency action, The Florida Bar filed a two-count complaint against Martocci. In count one, the Bar alleged that, in various instances during the course of the Berger proceedings, Martocci made unethical, disparaging, and profane remarks to belittle and humiliate the opposing party, Florence Berger, and her attorney, Diana Figueroa. The allegation of unethical behavior in count two arose from a confrontation between Martocci and James Paton, the father of Ms. Berger, during the recess of a hearing on May 8, 1998. After a three-day hearing in September 1999, the referee, Judge Cynthia G. Angelos, found Martocci guilty on both counts of violating rule 4-8.4(d) of the Rules Regulating The Florida Bar. The referee made the following findings of fact.
Based on testimonial and documentary evidence, the referee made findings as to specific instances of Martocci's misconduct. Regarding count one, the referee found that, in December 1996, Martocci called Ms. Berger a "nut case." After a deposition on May 5, 1998, Martocci referred to Ms. Berger as a "crazy" and a "nut case." During another deposition on May 5, 1998, Martocci made demeaning facial gestures and stuck out his tongue at Ms. Berger and Ms. Figueroa. After a hearing on June 24, 1998, upon exiting an elevator, Martocci told Ms. Figueroa that she was a "stupid idiot" and that she should "go back to Puerto Rico." In another incident, on June 19, 1998, during an intermission of a deposition, Ms. Figueroa telephoned the office of Judge Edward J. Richardson and reached Pamela Walker, a judicial assistant. After Ms. Figueroa spoke to Ms. Walker, Martocci took the telephone and yelled the word "bitch." Martocci admitted that because the phone was dead when he received it from Ms. Figueroa, he said "son of a bitch" as a frustrated response to missing the opportunity to speak to Ms. Walker. Martocci claims that he did not say these words to anyone in particular. The referee also found that throughout the Berger proceedings Martocci repeatedly told Ms. Figueroa that she did not know the law or the rules of procedure and that she needed to go back to school.
As to the second count, the referee found that on May 8, 1998, during a recess to a hearing in the Berger proceedings, when Mr. Paton entered the courtroom, Martocci said "here comes the father of the nut case." Mr. Paton responded by approaching respondent and saying, "If you have something to say to me, say it to my face, not in front of everyone here in the courtroom." Thereafter, in open court and for all to see, Martocci closely approached Mr. Paton and threatened to beat him. Upon Ms. Figueroa's attempt to intervene, Martocci told her to "go back to Puerto Rico." This confrontation only ended when a bailiff entered the courtroom.
On the basis of such misconduct, the referee recommended the imposition against Martocci of a public reprimand and a two-year period of probation with conditions including an evaluation by Florida Lawyers Assistance for possible anger management or mental health assistance or both. In recommending discipline, the referee noted that the underlying Berger proceedings were difficult cases which caused frustration to all the parties involved, including the presiding judges. The referee also noted that Martocci had a good reputation for representing his clients and had no prior disciplinary convictions. In aggravation, the referee recognized that, despite Martocci's substantial *1076 experience in the practice of law,[1] Martocci engaged in a pattern of unethical misconduct and refused to acknowledge the wrongful nature of his conduct.
In seeking review, Martocci raises four general claims: (1) the findings of fact are clearly erroneous and unsupported by the evidence in the record; (2) even if the findings of fact are correct, they legally do not constitute a violation of rule 4-8.4(d); (3) the referee erroneously shifted to Martocci the burden of proving his innocence; and (4) the public reprimand penalty is excessive, and the misconduct only warrants a private reprimand. Martocci further argues that a public reprimand is not in accordance with the Florida Standards for Imposing Lawyer Sanctions or the purposes of attorney discipline. Claims one, two, and four merit discussion and are analyzed in turn. Review of the record, however, demonstrates that claim three is without merit, and we dispose of it summarily.[2]

REFEREE'S FINDINGS
A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. See Florida Bar v. Summers, 728 So.2d 739, 741 (Fla.1999). If the referee's findings are supported by competent, substantial evidence, we do not re-weigh the evidence and substitute our judgment for that of the referee. See id. To overturn the referee's findings of fact and conclusions of guilt Martocci must demonstrate that the findings are clearly erroneous or unsupported by the record.
Martocci challenges the testimonial evidence presented by the Bar as imprecise, contradictory, unreliable, and without any support in the record. Martocci further argues that the finding that he yelled profanity through the telephone during the intermission of a deposition is a clearly erroneous interpretation of Ms. Walker's testimony. Finally, Martocci argues that, in making findings of fact based on Ms. Figueroa's testimony, the referee did not appropriately consider the testimony of several attorneys who testified that Ms. Figueroa did not have a good reputation for truth and veracity in the legal community.
Review of the record reveals that there is competent, substantial documentary and testimonial evidence to support the referee's findings of fact and conclusions of guilt. See Summers, 728 So.2d at 741. The deposition transcripts in the record alone establish that Martocci engaged in the unprofessional conduct of seeking to belittle and humiliate Ms. Figueroa and Ms. Berger. The record reflects that Martocci: (1) made insulting facial gestures to Ms. Berger and Ms. Figueroa; (2) called Ms. Figueroa a "bush leaguer"; (3) told Ms. Figueroa that depositions are not conducted under "girl's rules"; (4) continually disparaged Ms. Figueroa's knowledge and ability to practice law; and (5) threatened *1077 Mr. Paton physically within the courtroom during a recess to a hearing. The entire record is replete with evidence of Martocci's verbal assaults and sexist, racial, and ethnic insults supporting the referee's conclusion that Martocci engaged in patently unethical behavior designed to belittle and humiliate Ms. Berger and Ms. Figueroa and threaten Mr. Paton.
Furthermore, as to factual findings based on witness testimony, we have stated, "[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that this judgment is incorrect." Florida Bar v. Carricarte, 733 So.2d 975, 978 (Fla.1999) (quoting Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991)). Thus, although Martocci offered evidence that may have put Ms. Figueroa's credibility in doubt, we find no indication that the referee's assessment of her credibility was clearly erroneous. We reject Martocci's version of the controverted evidence because competent, substantial evidence exists to support the referee's resolution of the debatable issues in favor of the Bar. See Florida Bar v. Schultz, 712 So.2d 386, 388 (Fla.1998) ("A party does not satisfy his or her burden of showing that a referee's findings are clearly erroneous by simply pointing to the contradictory evidence where there is also competent, substantial evidence in the record that supports the referee's findings."); Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994) ("The responsibility for finding facts and resolving conflicts in the evidence is placed with the referee.").
Martocci's second claim is that, even if the referee's findings of fact are correct, Martocci's conduct was not prejudicial to the administration of justice as it did not rise to a level that violated rule 4-8.4(d). In support of this proposition, Martocci argues that Florida Bar v. Martocci, 699 So.2d 1357 (Fla.1997), established a distinction between unprofessional conduct and unethical conduct violating rule 4-8.4(d). In that case, we upheld the referee's conclusion that the Bar did not clearly and convincingly prove that Martocci violated rules 4-8.4(c) and (d), although Martocci used profanity against the opposing attorney and threatened the court reporter. However, we find Martocci to be distinguishable from the case before us today.
In Martocci, we reasoned that, despite the contrary evidence in the record, there was competent, substantial evidence to support the referee's resolution of the debatable issues in respondent's favor. See Martocci, 699 So.2d at 1360. Likewise, in the present case, because there is competent, substantial evidence supporting the referee's conclusion of guilt, we will not substitute our judgement for that of the referee. Such misconduct clearly prejudiced the administration of justice by further exacerbating relationships between respondent, opposing counsel, and the various judges involved in the already difficult underlying Berger cases. See Florida Bar v. Wasserman, 675 So.2d 103 (Fla. 1996) (attorney was disciplined under rule 4-8.4(a), violating Rules of Professional Conduct, for swearing at a judicial assistant over telephone after receiving unfavorable response to question posed to judge presiding over his case); Florida Bar v. Uhrig, 666 So.2d 887 (Fla.1996) (attorney violated rule 4-8.4(d) by mailing insulting letter to opposing party who was a member of a minority group).
We previously have admonished members of the Bar to refrain from offensive conduct. See Martocci, 699 So.2d at 1360. Martocci's disrespectful and abusive comments cross the line from that of zealous advocacy to unethical misconduct. See Florida Bar v. Buckle, 771 So.2d 1131, 1133 (Fla.2000) ("A lawyer's obligation of zealous representation should not and cannot *1078 be transformed into a vehicle intent upon harassment and intimidation."). Such unethical conduct shall not be tolerated.

DISCIPLINE
We disagree with Martocci's claim that the referee's recommended discipline is excessive and only warranting of a private reprimand. Martocci disrupted the already difficult Berger cases by engaging in a pattern of unethical conduct against the opposing litigant, her family, and her counsel. In addition, several cases support the referee's conclusion that a public reprimand is the appropriate sanction for Martocci's misconduct. First, in Martocci, where this Court affirmed the referee's not-guilty finding, we found that:
[W]e find the conduct of the lawyers involved in the incident giving rise to these proceedings to be patently unprofessional.... We should be and are embarrassed and ashamed for all bar members that such childish and demeaning conduct takes place in the justice system. It is our hope that by publishing this opinion and thereby making public the offending and demeaning exchanges between these particular attorneys, that the entire bar will benefit and realize an attorney's obligation to adhere to the highest professional standards of conduct no matter the location or circumstances in which an attorney's services are being rendered.
Martocci, 699 So.2d at 1360 (emphasis added). Second, in Buckle and in Uhrig, this Court publicly reprimanded the attorneys for violating rule 4-8.4(d) by sending the opposing party letters deemed to be discriminatory, disparaging, or frightening. See Buckle, 771 So.2d at 1133; Uhrig, 666 So.2d at 887. In the case before us, Martocci's behavior is more egregious than that in Buckle or Uhrig because Martocci engaged in a consistent pattern of unethical misconduct. Finally, the referee's report reflects that the aggravators and mitigators that were considered and the recommended sanctions serve the purposes of lawyer discipline.
We consider the violations very serious, and we approve the referee's recommended sanctions but only because they include a two-year probation period. Henry John Martocci is to be publicly reprimanded by a personal appearance before The Florida Bar Board of Governors and by the publication of this opinion. The two-year period of probation with the conditions outlined in the referee's report, including an evaluation by Florida Lawyers Assistance for possible anger management or mental health assistance or both, will become effective upon the filing of this opinion. Judgment for costs in the amount of $5,187.63 is entered against Henry John Martocci and in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Martocci was admitted to practice in Florida on July 1, 1977.
[2] Specifically, Martocci's third claim is that the referee's mere inquiry as to the factual findings in Florida Bar v. Martocci, 699 So.2d 1357 (Fla.1997), in which Martocci was found not guilty of misconduct, and her bringing to the hearing the report she wrote in that case prove that the referee shifted to respondent the burden to prove his innocence. This claim, which we recognize as an attempt to overturn the referee's findings of guilt couched in a burden of proof argument, is without merit. The record reveals no such shifting of the burden. Moreover, the referee's report expressly states that no prior disciplinary convictions or measures were considered, and the record reveals nothing to the contrary.