PER CURIAM.
 

 We have for review a referee’s report recommending that respondent Robert Joseph Ratiner, a member of The Florida Bar since 1990, be found guilty of professional misconduct and disciplined. We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const.
 

 For the reasons explained below, we approve the referee’s findings of fact and recommendations as to guilt. We also approve the mitigating factors and the aggravating factors found by the referee. With regard to discipline, however, we disapprove the referee’s alternative recommendations of disbarment or a two-year suspension. Instead, we impose a public reprimand and a suspension of sixty days, followed by two years’ probation with certain conditions.
 

 BACKGROUND
 

 The Florida Bar filed a complaint alleging ethical violations and seeking discipline against respondent, who is plaintiffs’ counsel in a civil suit against E.I. DuPont de Nemours & Co., Inc. (DuPont) regarding alleged harm to plaintiffs from their exposure to Benlate. The Bar sought discipline for alleged misconduct during a deposition of a representative of DuPont that was held in Wilmington, Delaware, during May 14-18, 2007. The Bar’s complaint charged respondent with violations of the following Rules Regulating the Florida Bar: 3-4.8 (Misconduct and Minor Misconduct); 3-4.4 (Criminal Misconduct); 4-3.5 (Disruption of a Tribunal); 4-4.4(a) (In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.); 4-8.4(a) (A lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.); 4-8.4(b) (A lawyer shall not commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects.); 4-8.4(d) (A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic.).
 

 After the filing of the complaint, the matter was referred to a referee. The Bar presented as evidence to the referee, with
 
 *37
 
 out objection from respondent, the video recording and transcript of the entire five-day deposition. The Bar also presented as evidence to the referee, again without objection from respondent, information about respondent’s 2006 diversion to the Bar’s practice and professionalism enhancement program to resolve a grievance previously filed against him. The referee possessed all of this evidence prior to conducting the summary judgment hearing. The parties then filed respective motions for partial summary judgment on the issue of guilt. At the hearing on the motions for partial summary judgment, the Bar clarified that its complaint was solely based on alleged misconduct that was captured in a three-minute video clip involving a confrontation between respondent and opposing counsel with regard to respondent’s personal laptop computer (“laptop incident”). The Bar affirmatively advised the referee that it was limiting its complaint to the laptop incident and did not intend to address any other video recordings or portions of the transcript from the five-day deposition that it submitted to the referee. The Bar advised the referee of the limitation of the complaint because the grievance committee had previously considered other instances of alleged misconduct by respondent during the May 2007 deposition and had found no probable cause for finding professional violations except for the laptop incident.
 

 After the hearing, the referee granted portions of the Bar’s motion for partial summary judgment, basing his findings of fact and conclusions of law on the Bar’s motion, its attachments, and the video clip of the laptop incident. The referee recommended that respondent be found guilty of violating rules 3-4.3, 4-3.5, 4-4.4(a), 4-8.4(a), and 4-8.4(d). The referee made the following findings of fact in support of his recommendation of guilt.
 

 During the course of the deposition, [opposing counsel] attempted to place an exhibit sticker on the Respondent’s laptop computer.
 

 Just prior to [opposing counsel’s] attempting to place the exhibit sticker on the computer, the Respondent was standing up and speaking forcefully towards [opposing counsel].
 

 As soon as [opposing counsel] attempted to place the exhibit sticker on the computer, the Respondent very briefly touched [opposing counsel’s] hand, then attempted to run around the table towards [him].
 

 Additionally, the [deponent] expressed that she was very scared as a result of the Respondent’s conduct.
 

 The Respondent’s own consultant had to attempt to calm the Respondent down and specifically told the Respondent to “take a Xanax.”
 

 Further, while the Respondent was acting as described above, the court reporter stated, “I can’t work like this!” Respondent then proceeded to forcefully lean over the deposition table, lambast [opposing counsel] in a tirade while proceeding to tear up the evidence sticker, wad it up and flick or toss it in the direction of [opposing counsel].
 

 The Respondent’s conduct during the deposition was outrageous, disruptive, and intimidating to the witness, opposing counsel, and other persons present during the deposition and otherwise prejudicial to the administration of justice.
 

 The referee also granted portions of respondent’s motion for partial summary judgment, finding that respondent did not commit any criminal acts during the laptop incident and thus concluded that respondent was not guilty of violating rules 3-4.4 and 4-8.4(b).
 

 
 *38
 
 Nearly a month after the initial hearing, the referee held a sanction hearing. The referee heard testimony from respondent, his trial consultant, and one of his law partners about respondent’s character and good reputation. The referee also considered affidavits filed by the deponent and the court reporter present during the laptop incident.
 

 After considering the above, the referee ultimately made two alternative recommendations as to discipline. As his primary recommendation, the referee recommends that respondent be disbarred. As to this recommendation, the referee stated:
 

 I recognize that disbarment is an extreme sanction.... The practice of law is a privilege. The Supreme Court of Florida has the power to revoke the license of an attorney whose unfitness to practice law has been duly established. The Florida Bar, in this case before me, has established that unfitness.
 

 (Citation omitted.)
 

 In making this recommendation, the referee found and considered the following aggravating and mitigating circumstances. In aggravation, the referee found that respondent (1) exhibited a pattern of misconduct, (2) committed multiple offenses, (3) refused to acknowledge the wrongful nature of his conduct, and (4) had substantial experience in the practice of law. The aggravating factor of a pattern of misconduct was based in part on various acts of the respondent during the 2007 deposition, for which the grievance committee found no probable cause and for which the respondent was not charged. Those acts included the utterance by the respondent of a series of belligerent, abusive, and vulgar comments in the course of the 2007 deposition. The pattern-of-misconduct aggravating factor was also based on the conduct underlying a grievance committee report of diversion filed in September 2006. That report related in part to abusive conduct by the respondent at depositions in a case beginning in 2002.
 

 In mitigation, the referee found that respondent had (1) an absence of a prior disciplinary history, (2) an absence of a dishonest motive, and (3) emotional problems. The referee also found as additional mitigation the fact that respondent “appear[ed] to have an intelligent understanding of the law, as well as the facts surrounding the various cases he [was] prosecuting on behalf of his clients.”
 

 As an alternative to the recommendation of disbarment, the referee recommends “Plan B” — a two-year suspension with conditions. In making this alternative recommendation, the referee stated: “Outrageous misconduct in court and at depositions must be subject to discipline. Attorneys who believe they will not be sanctioned or disciplined for unprofessional conduct will, by nature, continue to try and get away with it.”
 

 Additionally, the referee recommends that the following conditions should accompany any imposed discipline: (1) a requirement that respondent attend mental health counseling to address anger management; (2) a requirement that future depositions conducted or attended by respondent be videotaped or that he be required to have co-counsel present at such depositions; and (3) a requirement that respondent write letters of apology to the persons involved in the May 2007 deposition — the deponent, all court reporters, and the vid-eographer.
 

 Respondent challenges whether he should be disbarred based on his conduct during a single deposition when he has no prior disciplinary history. Respondent initially argued that public reprimand is the appropriate discipline in this case. How
 
 *39
 
 ever, at the oral argument, he acknowledged that a short-duration suspension with other conditions might be the appropriate suspension. Respondent further argues that the referee failed to consider mitigating factors and improperly considered certain matters as aggravating factors. Finally, he argues that the referee’s probationary term that requires all of his future depositions to be videotaped is not authorized under the Rules Regulating the Florida Bar. The Bar answers the issues raised by respondent and in turn raises a single issue on cross-petition, arguing that a suspension for two years is appropriate because respondent has “habitually terrorized attorneys and others with explosive behavior.”
 

 ANALYSIS
 

 Neither party challenges the referee’s findings of fact and recommendations as to guilt. We therefore approve those findings and recommendations without further comment.
 

 First, we consider the respondent’s challenge to the pattern-of-misconduct aggravating factor. A referee’s findings in aggravation carry a presumption of correctness and should be upheld unless clearly erroneous or without support in the record.
 
 See Fla. Bar v. Ticktin,
 
 14 So.3d 928, 936 (Fla.2009);
 
 Fla. Bar v. Arcia,
 
 848 So.2d 296, 299 (Fla.2003);
 
 see also Fla. Bar v. Morse,
 
 784 So.2d 414, 415-16 (Fla.2001);
 
 Fla. Bar v. Bustamante,
 
 662 So.2d 687, 687 (Fla.1995);
 
 Fla. Bar v. Hecker,
 
 475 So.2d 1240, 1242 (Fla.1985).
 

 Contrary to the respondent’s argument, it is not necessary for misconduct to have been a basis for discipline in order for it to be considered in aggravation. Here, the respondent’s pattern of engaging in abusive conduct is relevant to the appropriate sanction to be imposed for the violations at issue in this case. We therefore reject the respondent’s argument regarding aggravation.
 

 Next, respondent urges us to find additional mitigation in this case, specifically: (1) absence of a selfish motive on the part of respondent; (2) his good character and reputation; and (3) respondent’s expression of remorse. Merely because there is some evidence pertaining to a mitigating factor does not mean that that evidence rises to the level necessary to support a finding of that mitigator.
 
 Cf. Ticktin.
 
 Here, we conclude that the referee’s failure to find such alleged mitigation is not clearly erroneous. Therefore, we reject respondent’s argument that we should apply additional mitigating factors in considering the appropriate discipline to be imposed in this case.
 

 Finally, both parties seek review of the referee’s alternative recommendations as to discipline. Respondent seeks review of the referee’s nonfinding of other mitigating factors, the alternative recommendations for disbarment or a two-year suspension, and the recommended probationary conditions. The Bar seeks review, arguing in favor of the referee’s recommended two-year suspension, with the probationary conditions.
 

 In reviewing a referee’s recommended discipline, the Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction.
 
 See Fla. Bar v. Anderson,
 
 538 So.2d 852, 854 (Fla.1989);
 
 see also
 
 art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing caselaw and the Standards for Imposing Lawyer Sanctions.
 
 See Fla. Bar v. Temmer,
 
 753 So.2d 555, 558 (Fla.1999). Here, we disapprove the
 
 *40
 
 referee’s alternative recommendations for discipline because neither of his recommendations for discipline is reasonably-based on existing caselaw and the standards.
 
 [1]
 

 The referee reported that he considered the following cases prior to recommending discipline:
 
 Florida Bar v. Tobkin,
 
 944 So.2d 219 (Fla.2006);
 
 Florida Bar v. Morgan,
 
 938 So.2d 496 (Fla.2006);
 
 Florida Bar v. Morgan,
 
 791 So.2d 1103 (Fla.2001);
 
 [2]
 

 Florida Bar v. Martocci,
 
 791 So.2d 1074 (Fla.2001);
 
 Florida Bar v. Martocci,
 
 699 So.2d 1357 (Fla.1997);
 
 Florida Bar v. Wasserman,
 
 675 So.2d 103 (Fla.1996);
 
 DeBock v. State,
 
 512 So.2d 164 (Fla.1987);
 
 Florida Bar v. Hirsch,
 
 342 So.2d 970 (Fla.1977);
 
 Florida Bar v. Thomson,
 
 271 So.2d 758 (Fla.1972);
 
 Florida Bar v. Pahules,
 
 233 So.2d 130 (Fla.1970). However, it is evident from the referee’s report that he found little or no relation between the cases cited above and the facts in this case. The referee acknowledges that his “review of the case law set [forth] reveals that there is no case directly on point with the misconduct set forth in the Bar’s complaint.” Nonetheless, the referee urges us to impose the recommended discipline on respondent, even though there is a dearth of caselaw on point that provides support for imposing disbarment or a two-year suspension. The Bar also acknowledges that the existing caselaw does not support a recommendation that disbarment or a two-year rehabilitative suspension be imposed for the kind of misconduct involved in this case. We decline to impose either of the alternative recommended sanctions. Rather, we disapprove the recommendations as not reasonably based on existing caselaw or standards.
 
 [3]
 

 We find that two of the cases cited by the referee have some relevance to the facts before us:
 
 Tobkin,
 
 944 So.2d at 219, and
 
 Morgan,
 
 938 So.2d at 496. In both of these cases the respondents were found guilty of violating their professional duties and were disciplined by lengthy suspensions for exhibiting behavior that is comparable to the misconduct respondent Ratiner displayed in the laptop incident. Respondent Tobkin received a ninety-one-day suspension for engaging in unprofessional behavior during pretrial discovery. Respondent Morgan also received a ninety-one-day suspension for verbally abusing a judge. Yet, the instant case is distinguishable from the referenced cases. First, in
 
 Tobkin
 
 and
 
 Morgan
 
 each respondent exhibited more egregious behavior than that of which respondent Ratiner has been found guilty. In
 
 Tobkin,
 
 the respondent was charged in a four-count complaint with violating Bar rules in connection with his representation of two plaintiff clients in medical malpractice lawsuits.
 
 See Tobkin,
 
 944 So.2d at 219.
 
 *41
 
 Tobkin was found to have exhibited objectionable conduct during pretrial discovery and objectionable behavior at a cancer treatment center — snatching medical records from opposing counsel — that resulted in security personnel being called to restrain him.
 
 See id.
 
 at 221-22. Tobkin was also found guilty of disobeying court orders and filing sham pleadings in the course of representing clients.
 
 See id.
 
 at 226. In
 
 Morgan,
 
 the respondent was involved in a hostile and disrespectful verbal tirade directed at the presiding judge in open court during a felony trial.
 
 See Morgan,
 
 938 So.2d at 497-98. By comparison, the misconduct of respondent here was directed at opposing counsel in a conference room at a civil discovery deposition. Additionally, both Tobkin and Morgan had been previously disciplined for certain similar misconduct. Respondent Ratiner has not been previously disciplined by this Court.
 

 As for relevant standards, standard 7.2 provides: “Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.” Here, respondent’s misconduct caused injury to the legal system itself. His unprofessional behavior occurred in Delaware and in the presence of the deponent, a member of the public, and others. It is evident that respondent’s brief grabbing of opposing counsel’s hand, his movement around the conference table, and his act of tearing off the exhibit sticker and flicking the wadded-up sticker at opposing counsel during the laptop incident were intentional acts that he knew or certainly should have known violated his professional duties as a Florida attorney. Respondent’s unprofessional, belligerent conduct during the laptop incident is an embarrassment to all members of The Florida Bar.
 
 [4]
 

 Based on standard 7.2 and the cases discussed above, we conclude that respondent Ratiner should be suspended from the practice of law for sixty days. Even though the suspension term imposed is not one that would require respondent to prove rehabilitation prior to reinstatement, we must emphasize that respondent’s behavior during the laptop incident was unacceptable and unbecoming of any member of the Bar, especially one who has been a practicing attorney for more than nineteen years. In recognition of this, we determine that the sanction of a suspension should be coupled with a public reprimand and should be followed by a two-year period of probation. During the probationary period, respondent shall be required to undergo mental health counseling and prepare and mail letters of apology to the deponent, the court reporters, and the vid-eographer present during the May 2007 deposition at issue. Further, during the probationary period, he shall be accompanied by co-counsel approved by the Bar during any depositions and other legal proceedings where a judge is not presiding or, alternatively, he shall ensure that such appearances or proceedings are video-recorded.
 

 CONCLUSION
 

 Accordingly, Robert Joseph Ratiner is hereby directed to appear before the Board of Governors of The Florida Bar for a public reprimand at a date and time to be determined by the Board.
 
 See
 
 R. Regulating Fla. Bar 3 — 5.1(d). He is also suspended from the practice of law for sixty days, followed by two years’ probation un
 
 *42
 
 der the conditions as set forth above. The suspension will be effective thirty days from the filing of this opinion so that respondent can close out his practice and protect the interests of existing clients. If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Respondent shall accept no new business from the date this opinion is filed until the suspension is completed.
 

 Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Robert Joseph Ratiner in the amount of $3,665.83, for which sum let execution issue.
 

 It is so ordered.
 

 THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . Referees assigned to enter findings of fact and to make recommendations as to guilt in lawyer disciplinary cases should present a
 
 single
 
 recommended sanction having its basis in the case law and the standards.
 

 [2]
 

 . We disposed of this disciplinary case against respondent Morgan by way of an unpublished order.
 

 [3]
 

 . The referee relied upon standard 7.1 to support disbarment. Standard 7.1 provides:
 

 Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
 

 However, the report of the referee is unclear as to how he believes that respondent knowingly caused
 
 serious
 
 or
 
 potentially serious
 
 injury to the public or the legal system. Furthermore, there is nothing in the record on review that provides support for such a determination, which is crucial for applying standard 7.1. Thus, we conclude that standard 7.1 is inapplicable here.
 

 [4]
 

 . The referee has suggested and we agree that members of the Bar and law students could view the video recording of the laptop incident in the context of a course on professionalism as a glaring example of how not to conduct oneself in a legal proceeding.