PER CURIAM.
We have for review a referee’s report recommending that Respondent Jeffrey Alan Norkin be found guilty of professional misconduct. The referee recommended a sanction of a ninety-day suspension, followed by an eighteen-month period of probation. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee’s findings of fact and recommendations of guilt. We disapprove the referee’s recommended sanction of a ninety-day suspension and, instead, impose a two-year suspension. Further, Respondent shall re *79 ceive a public reprimand that will be administered before the Court.
BACKGROUND
On July 11, 2011, The Florida Bar filed a complaint against Norkin, alleging that he engaged in numerous acts of misconduct by behaving in an unprofessional and antagonistic manner during the course of litigating a civil case. A referee was appointed to consider the complaint and hold hearings. The referee has issued a report in which she made findings and recommendations.
In July 2008, Respondent was representing the defendants, Mr. David Beem and “Floors to Doors, Inc., a Florida corporation,” in Gary Ferguson, individually, and derivatively on behalf of Floors to Doors, Inc. v. David Beem and Floors to Doors, Inc., Circuit Court Case Number: 07-34790 CA 20, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County (“Ferguson v. Beem”). Attorney Gary Brooks, a thirty-year member of The Florida Bar, represented the plaintiffs in the litigation.
Previously, Ferguson and Beem had decided to establish a business together and formed a corporation. Approximately ten years after Ferguson and Beem started the business, the two had serious conflicts that resulted in the legal action. Beem was initially represented by a different attorney, but Respondent assumed representation in July 2008. Initially, Respondent was cordial in his interactions with Brooks. However, one month later, in August 2008, Respondent’s demeanor changed and he became combative. Based upon Respondent’s unprofessional behavior towards the presiding judges, a senior judge who was appointed to serve as a court-appointed provisional director of the corporation, and opposing counsel, the referee recommended that Respondent be found guilty of violating Rules Regulating the Florida Bar 4-8.5(c) (a lawyer shall not engage in conduct intended to disrupt a tribunal), 4-8.2(a) (a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, or public legal officer), 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct), and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage or humiliate other lawyers on any basis).
With regard to the disciplinary sanction, the referee recommended a ninety-day suspension followed by an eighteen-month period of probation. The referee also recommended that as a condition of the suspension, Respondent must submit to an evaluation by a licensed and Florida Bar-approved mental health professional and undergo any recommended counseling. The referee awarded costs to the Bar in the amount of $7,970.58.
On review, Respondent asserts that the referee’s recommendations of guilt are not supported. In addition, both Respondent and the Bar challenge the referee’s recommendation of a ninety-day suspension. Respondent claims that the misconduct warrants only a public reprimand. The Bar argues that the appropriate sanction is a one-year suspension with a public reprimand.
FACTS AND RECOMMENDATIONS OF GUILT
Rules 4-8.2(a) and 4-8.4(a). Rule 4-8.2(a) states that a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to *80 its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, or public legal officer. Rule 4-8.4(a) provides that a lawyer shall not violate or attempt to violate the Rules of Professional Conduct.
The referee found that during the Ferguson v. Beem litigation, presiding Judge Dresnick appointed Mr. David Tobin, a senior circuit judge and judicial officer, to serve as a provisional director of Floors to Doors, Inc., to “break the tie for any vote on which [the two existing directors didn’t] agree.” Respondent vigorously opposed Judge Dresnick’s decision to appoint To-bin. Further, as noted in the record of a later hearing before Judge Dresnick, the Judge stated to Respondent: “You had unpleasant things to say about Mr. Tobin.”
When Tobin called the first meeting at Floors to Doors, Ferguson and Beem gave him a written outline with regard to issues that they were unable to agree upon. To-bin listened to their respective positions and made decisions regarding each issue. However, Respondent called Tobin later and complained to him, arguing that Tobin should require Ferguson to invest more money in the corporation. Tobin explained to Respondent that this was not the function of a provisional director.
Under the terms of Judge Dresnick’s appointment, Ferguson and Beem were both required to pay half of Tobin’s fee. Ferguson paid, but Beem did not. Tobin was forced to withdraw from the case and hire counsel to represent him for the purpose of collecting his unpaid fee. A writ of garnishment was served on Respondent. In a letter dated October 27, 2009, Respondent wrote Tobin and stated:
I hereby demand that you rescind, vacate and withdraw the writ of garnishment or I will file suit against [you] in one week from today’s date....
Further, I wonder why it is Gary Ferguson who delivered or had any part in delivering or any role whatsoever related to this writ of garnishment. The cozy, conspiratorial nature of your relationship with Mr. Ferguson and/or his counsel will be fully investigated in any lawsuit filed against you.
Again, Mr. Tobin, your misuse of the law is unbecoming of a former judge and it will be addressed fully in the courts....
The referee found that Respondent’s correspondence to Tobin improperly threatened the filing of a legal action against Tobin personally and, without supporting facts, asserted that Tobin was involved in a conspiracy. After considering the evidence produced at the disciplinary hearing, which included Tobin’s credible testimony, the referee concluded that To-bin did not have a cozy, conspiratorial relationship with Ferguson or his attorney. The referee found that there was no conspiracy and that Respondent had made the statement with reckless disregard for the truth. Further, Respondent published his groundless allegation to third parties, Brooks and Beem. Norkin’s sole purpose in making the statement was to berate Tobin into dissolving the writ of garnishment.
Also, in the Ferguson v. Beem litigation, Respondent filed a motion to recuse Judge Dresnick, in which Respondent also made disparaging comments regarding Judge Dresnick and Senior Judge Tobin. Respondent asserted:
At a hearing on December 22, 2009, [Floors to Doors (FTD)] submitted incontrovertible proof that Ferguson had directly and egregiously violated a court order by effectively stealing $16,000 from FTD’s operating account, Judge Dresnick again focused his anger on undersigned, stating *81 among other things that FTD should move to recuse him if they are unhappy with how he has presided over the case and that every time undersigned appears before him, he repeats the “Same crap.” Judge Dresnick ordered Ferguson to return the money but denied all requests for sanctions despite the clear, criminal violation of the Court’s order.
... Mr. Tobin’s efforts did nothing whatsoever to help the company and he, like Judge Dresnick, exclusively acted at the beck and call of Ferguson, whom the court has found filed this lawsuit solely to injure the company and Beem. Judge Dresnick then sanctioned FTD for not paying Tobin despite the fact that every hearing Tobin attended he did not give notice to undersigned.
At all times, Judge Dresnick’s rulings and demeanor have been favorable to Ferguson, who has, in fraudulent and criminal manner, used this Court as an instrument of destruction. He has accomplished this exclusively through the conduct of the case by Judge Dresnick.
... [I]t seems apparent that Judge Dresnick has known and been well-acquainted with opposing counsel, Gary Brooks, Esq. They exchange personal information and are very friendly with each other. On the other hand, there have been no such pleasantries between Judge Dresnick and this attorney. Obviously, based on the foregoing, Judge Dresnick’s treatment and demeanor toward undersigned has been quite opposite: hostile, impatient, and highly critical and disapproving.
Respondent’s motion to recuse Judge Dresnick contained statements alleging that Judge Dresnick acted at the “beck and call” of the plaintiff, and that there was an improper and illegal relationship between the judge and plaintiffs’ counsel, Brooks. The referee found Respondent’s motive was to obtain the disqualification of Judge Dresnick and, thus, a more favorable forum for the litigation of his clients’ claim. Further, the referee found that Norkin’s statements were devoid of any basis in the record.
Before this Court, Norkin claims that his statements did not accuse Tobin of “corrupt conduct” or “corruption.” In stark contrast to Norkin’s arguments, his letter plainly asserted that “[t]he cozy, conspiratorial nature of [Tobin’s] relationship with Mr. Ferguson and/or his counsel will be fully investigated” and that Tobin engaged in “misuse of the law [that] is unbecoming of a former judge.”
Next, Respondent argues that the referee recommended finding him guilty of acts that were not charged in the Bar’s complaint. Norkin’s argument is without merit. The “uncharged acts” that Respondent challenges are, for the most part, simply findings of fact based on the evidence presented before the referee. Norkin has confused the distinction between the general allegations of misconduct in the complaint and the referee’s thorough findings of fact.
Further, if Respondent is challenging the referee’s factual findings, the Court’s review of such matters is limited— if a referee’s findings of fact are supported by competent, substantial evidence in the record, the Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); see also Fla. Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). Here, the referee’s findings are amply supported by sworn testimony provided by Brooks and Tobin during the disciplinary hearings, transcripts of the Ferguson v. Beem proceedings, and documents (letters and e-mails) submitted into the disciplinary record.
*82 Respondent also claims that he was not on notice of the allegations against him and was therefore unable to defend himself properly. In Florida Bar v. Fredericks, 731 So.2d 1249, 1258 (Fla.1999), the Court reiterated that a referee could find instances of misconduct not specifically charged in the complaint where the conduct was “clearly within the scope of the Bar’s accusations” and the attorney was aware of the rules she was alleged to have violated and “the nature and extent of the charges pending against her.” See also Fla. Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997). In the present case, the complaint stated that Respondent “behaved in a disruptive manner in court” and quoted transcripts from the Ferguson v. Beem proceedings. Thus, Respondent’s antagonistic, unprofessional behavior was “clearly within the scope of the Bar’s accusations” and Respondent was informed of the nature and extent of the charges. Based on the statements Norkin made regarding Judge Dresnick and Senior Judge Tobin, the referee recommended that he be found guilty of violating rules 4-8.2(a) and 4-8.4(a). We approve the referee’s recommendation and find Norkin guilty of violating rules 4-8.2(a) and 4-8.4(a).
Rule 4-3.5(c). Rule 4-3.5(c) provides that “[a] lawyer shall not engage in conduct intended to disrupt a tribunal.” The referee found that Respondent demonstrated unprofessional behavior and demeanor during numerous hearings in Ferguson v. Beem, before both Judge Dresnick and successor Judge Valerie Manno Schurr. The record contains a plethora of competent, substantial evidence that support the referee’s findings and recommendation that Respondent be found guilty of violating the rule.
During a hearing on April 17, 2009, Judge Dresnick commented, “I am finding these hearings with you extremely difficult. You talk very loud. I am telling you at every hearing. You are very angry, you make me angry. I don’t like angry lawyers. There is no point in it.” Later in the same hearing, Judge Dresnick commented, “I have told you three times already. I’m telling you, I am different than the last judge and so you are going to modify your behavior when you come in here. I am a low-volume, low-key guy until I get pissed off. You know what pisses me off? People coming in here and raising their voices at me.”
At a hearing on December 22, 2009, Judge Dresnick remarked, ‘You come in like a bull in a china shop. You do it every time. I don’t know if you are trying to piss me off or what but you do it.” In the same hearing, Judge Dresnick commented, “I remember you coming in here and screaming the way you are doing consistently. ... You’re the one that raised your voice.”
During a hearing before Judge Dresnick on July 13, 2009, the record reveals the following exchange:
Court: Mr. Norkin?
Norkin: No, I suggest you reject this entire report. He should have known—
Court: I’m not rejecting the entire report, that’s overruled. I’m accepting the report.
Norkin: What—
Court: As a practical matter how do I deal with D?
Norkin: You ignore it. My client is not going to change the signatory on any of these checks. My client asked this Court to make him the 51 percent voting shareholder so he can run the company the way he has been doing for 15 years. You rejected that. Now the Court is going to change the bank accounts, is going to order that the bank accounts’ *83 signatories be changed, what’s good for the goose is good for the gander.
Court: What’s good for your goose is good for your gander. It’s only good for your goose—
Norkin: I haven’t—
Court: Excuse me, sir. I’ve had enough with you. You only like it when it’s going your way and you don’t see it any other way.
Judge Dresnick also explained to Respondent:
Court: [N]ow, you don’t like Tobin because he doesn’t agree with your client. If Tobin were going the other way, you’d be happy as can be. If your client was named Ferguson or if Tobin was saying whatever he’s saying to Ferguson to Beem, you would be tickled to death. But [you are] unhappy with the result. You’re not happy about it because he doesn’t agree with you. You get very unhappy when someone doesn’t agree with you. I’ve seen that. You get unhappy with me when I don’t agree with you, but I don’t take it personal.
Eventually, Judge Dresnick granted Norkin’s motion to recuse. However, Nor-kin continued his unprofessional behavior before Judge Valerie Manno Schurr, who was the successor judge. During a hearing held on September 20, 2010, the following exchange occurred:
Norkin: If this trial doesn’t go, this company is finished.
Court: You keep saying that to me.
Norkin: Your Honor, but that’s true. This counterclaim has been pending and we won summary judgment on it—
Court: Don’t yell at me.
Norkin: I don’t mean to, Judge. We won summary judgment—
Court: You yell at me every time we have a hearing.
Norkin: I’m sorry, Your Honor. You know, Your Honor—
Court: I never yell at anybody.
Court: I’m done. You do this to me every single time you are in front of me, whether it is in motion calendar, in my office or it’s a special set or today. You yell at me and you scream at me and I’m asking you to please stop. I’m done.
At a hearing held on September 28, 2010, Judge Manno Schurr and Respondent had the following exchange:
Norkin: Your Honor, why are you asking Mr. Brooks? Do you believe him more than me?
Court: No. Listen, do me a favor. I’m going to ask you to leave, you’re doing it again.
Norkin: I just wonder why it is—
Court: Oh my god, I’m done. Goodbye. Not doing this. Not going to be questioned by you. You do this to me every single time. All I did was ask him a question. I was going to ask him for the order if he had it. What do I get, I get rudeness and I get you asking me questions and insinuating things. [...] Tell me what I’m going to do. I’m going to send you to the general magistrate and I don’t care if you don’t want to go. You’re going to go anyway. You don’t have to pay for it. I want an order referring them to Judge Schwabedissen for these discovery matters. Maybe she’ll have better luck with you because you’re very rude to me, sir.
Before the referee, Respondent argued that his voice is naturally loud, he speaks loudly when he feels he is not being heard, and he is working with a behavioral therapist to correct his behavior. The referee found Respondent’s explanation concerning the volume of his voice patently unbe *84 lievable.[1] In comparison, the referee found Brooks’ testimony credible and informative. Brooks testified:
Normally [Respondent] would speak in an ordinary tone of voice, particularly when he won. He did win certain hearings. He did make points and he won on those points. On those occasions, he was an ordinary lawyer, you know, he spoke in a moderate tone of voice. He made arguments. When he started to lose or he got frustrated either by something I — by an argument I would make, or the judge, that’s when he would [] start getting very excited and he would start shouting.
The referee concluded that Respondent’s behavior was calculated. When Respondent felt he was not winning during a particular hearing, he would raise his voice and behave in an angry, disrespectful manner. Both Judge Dresnick and Judge Manno Schurr indicated Respondent was “screaming” at them. On multiple occasions, both judges found it necessary to warn Respondent regarding his behavior, but he persisted until the proceedings were disrupted. Judge Manno Schurr was forced to terminate proceedings and refer all discovery matters to a general magistrate. Respondent’s lack of professionalism and inappropriate courtroom demean- or made it impossible for the judges to conduct hearings. Based on these facts, the referee found that Respondent engaged in conduct intended to disrupt tribunals by exhibiting rude behavior and yelling during courtroom hearings. The referee specifically noted that “the transcripts reveal that both Judges Dresnick and Manno Schurr were not merely concerned with Respondent’s voice level, but rather his antagonistic style towards the bench, which made it difficult for the judges to conduct proceedings.”
Before this Court, Norkin makes the incredible assertion that “Nothing in the record suggests that Respondent was disrespectful toward the court at any time.” He also claims that he apologized to Judge Manno Schurr during a hearing and that his apology should diminish his misconduct. However, the transcript demonstrates that Norkin resumed his unprofessional conduct during that very hearing before Judge Manno Schurr. Further, Norkin’s single apology does not provide him with immunity to repeatedly engage in unprofessional behavior and commit numerous violations of the Rules Regulating the Florida Bar. In contrast to Respondent’s bald assertions, the referee’s findings of fact are supported by witness testimony and hearing transcripts. The record clearly demonstrates that Norkin engaged in antagonistic and unprofessional behavior toward Judges Dresnick and Manno Schurr. See Fla. Bar v. Abramson, 3 So.3d 964, 965-66 (Fla.2009) (finding a violation of rule 4-3.5(c) premised upon discourteous and disrespectful behavior toward a judge); Fla. Bar v. Morgan, 938 So.2d 496, 498-500 (Fla.2006) (finding a violation of rule 4-3.5(c) premised upon the respondent’s inappropriate courtroom behavior, including antagonism toward the bench). We approve the referee’s recommendation that Respondent be found guilty of violating rule 4-3.5(c) (conduct intended to disrupt a tribunal).
Rule 4-8.4(d). Rule 4-8.4(d) prohibits an attorney from engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through *85 callous indifference, disparage or humiliate others lawyers on any basis. Based upon Norkin’s behavior directed toward opposing counsel Brooks, the referee recommended that he be found guilty of violating this rule.
First, in an e-mail dated August 27, 2008, which Norkin sent to Brooks, Norkin stated: “You will join the many attorneys who have done so and lived to regret their incompetent, unethical and improper litigation practices.”
Second, in another e-mail sent August 27, 2008, Norkin sent a message to Brooks, stating: “You must really lie a lot to even think I would. Liars, in general, not you necessarily, are so suspicious of others lying.”
Third, in an e-mail dated September 22, 2008, Respondent directed a transmission to Brooks and stated:
By the way, I found your recent letters to the judge to be improper and your motions to be laughable and scurrilous. I look forward to litigating the issues you highlight and recovering the fees I bill my client from you PERSONALLY. I think I have never litigated with an attorney who is as disingenuous as you. This really is fun, and so from that standpoint, I thank you.... Let me know if you’ll chat with me on the phone. I so want to.
Fourth, in another e-mail sent September 22, 2008, which Norkin sent to Brooks, Respondent stated: “When is your unprofessional, ludicrous, downright unintelligent conduct going to stop? Before or after you are directed to pay my bills?”
Fifth, in an e-mail dated September 23, 2008, Norkin stated to Brooks that: “If I’m going to criticize your professionalism and honesty, I prefer to do it in writing [emails] anyway. I don’t want my words considered kind out of context. I don’t say many kind words to those I consider dishonest such as yourself.”
Sixth, in a letter dated February 4, 2009, which Norkin wrote and mailed to Brooks, Respondent stated:
This is to formally notify you that a motion for sanctions against you personally and your firm will be filed in three weeks. I believe that you committed malpractice by allowing your client to file this lawsuit and judging by your client’s nature, I have no doubt he will be suing you in the near future ... you have committed malpractice.... Show the evidence or you are about to have a very massive problem.
Seventh, in a letter dated April 16, 2009, which Norkin wrote and mailed to Brooks, Respondent stated:
I also believe that you should be very worried about this situation. By deceiving the Court so many times and prolonging the matter, which has been formally declared an abuse of process, your client might have a suit against you, for your poor advice and other misconduct ... I would respectfully suggest you put your carrier on notice.
Eighth, Respondent engaged in several improper outbursts directed toward Brooks during the litigation. On January 7, 2009, during a hearing before Judge Trawiek in Ferguson v. Beem, Respondent stated: “What more do we have to do, your honor, to show you this is the honest man and this is a dishonest man?” When Respondent made this accusation during the court hearing, he pointed at Brooks while saying “this is a dishonest man.”
Ninth, in July 2010, in Judge Manno Schurr’s chambers while trying to set a hearing, Respondent shouted “at the top of his lungs” in the presence of several lawyers and an assistant, “[Brooks] is a liar. He’s lying.”
*86 Tenth, on September 20, 2010, Respondent approached Brooks in the hallway of the county courthouse and, in the presence of “at least four to six [other] attorneys,” said very loudly that he had spoken to other attorneys and confirmed that Brooks was “underhanded and a scumbag.”
The referee found that Norkin’s letters, e-mails, and public insults disparaged and humiliated Brooks. Further, the referee found that Norkin’s conduct in shouting at Brooks in chambers and courthouse hallways, while others were present, were efforts to disparage and humiliate his opposing counsel. The referee recommended that the Court find Respondent guilty of violating rule 4 — 8.4(d).
Before this Court, Respondent argues that he should not be found guilty of violating rule 4-8.4(d) (conduct prejudicial to the administration of justice). In making this argument, Norkin continues his attack to blame Brooks for Respondent’s own behavior. Norkin asserts that his misconduct was justified because Brooks caused devastating consequences to Norkin’s client. In making these claims, Respondent points to only his versions of events— however, the referee found that Respondent’s versions were not credible. Furthermore, even if one considers opposing counsel to be annoying or unpleasant, that does not provide a license for an attorney to engage in misconduct. Norkin fails to recognize that he is responsible for his own actions. He attempts to place full blame on Brooks as the reason he wrote the unprofessional e-mails and letters and was antagonistic toward the judges he encountered; however, nothing found by the referee supports Respondent’s claims that Brooks engaged in improper conduct that pushed him to a breaking point in his professional conduct.[2] Further, the record amply demonstrates that Norkin knowingly, or through callous indifference, was incessantly disparaging and humiliating Brooks. See Fla. Bar v. Forrester, 916 So.2d 647, 649 (Fla.2005) (respondent violated rule 4-8.4(d) by knowingly making false statements in pleadings that were disparaging and humiliating to the person about whom the statements were made, when she referred to the person as a stalker, a convicted felon, and a child molester).
The referee’s recommendation that Nor-kin should be found guilty of violating rule 4-8.4(d) is supported by Florida Bar v. Tobkin, 944 So.2d 219 (Fla.2006). Tobkin was found guilty of violating the rule in connection with a disturbance he created at a cancer center and received a ninety-one-day suspension. Tobkin went to the center to meet with defense counsel concerning x-rays of Tobkin’s client. Tobkin grabbed the records away from opposing counsel, approached the receptionist, demanded to know who had released the records, and screamed at the film librarian, which led the center’s personnel to summon security. Id. at 222. Tobkin engaged in a public demonstration of unprofessional behavior toward opposing counsel, which is similar to Respondent’s shouting in the presence of the judicial as *87 sistant, making unscrupulous accusations in a court hearing, and yelling in the hallway of the courthouse. In fact, Respondent’s misconduct is more egregious than Tobkin’s because Respondent repeatedly disparaged Brooks on numerous occasions. See Fla. Bar v. Martocci, 791 So.2d 1074 (Fla.2001) (finding the respondent violated rule 4-8.4(d) by making insulting facial gestures at opposing counsel, making sexist comments, and disparaging opposing counsel’s competence in the practice of law); Fla. Bar v. Adams, 641 So.2d 399 (Fla.1994) (finding a rule 4-8.4(d) violation arising out of a letter that, without basis, accused opposing counsel of suborning perjury).
Norkin’s unprofessional conduct produced an abundance of competent, substantial evidence in this record that supports the referee’s findings and recommendation of guilt. We approve the referee’s recommendation and find Respondent guilty of violating rule 4-8.4(d).
DISCIPLINARY SANCTION
The referee recommended a ninety-day suspension followed by an eighteen-month period of probation. The referee noted that the Bar sought a longer suspension, but the referee gave “great weight to the mitigation presented regarding Respondent’s mental and emotional issues.” The referee recommended that as a condition of the suspension, Respondent submit to an evaluation by a licensed and Bar-approved mental health professional and undergo any recommended counseling. While Respondent is under the eighteen-month period of probation, he must continue any recommended counseling. Further, Respondent shall prepare and mail letters of apology to Brooks, Tobin, Judge Dresnick, and Judge Manno Schurr.
The referee found seven aggravating factors including multiple offenses, refusal to acknowledge the wrongful nature of his misconduct, substantial experience in the practice of law (Respondent has been a member of The Florida Bar for nineteen years), and vulnerability of the victim (Brooks was 71 years old and he suffered from type II diabetes, Parkinson’s disease, renal cancer, and high blood pressure; Brooks passed away in 2012). The three remaining aggravating factors found by the referee are significant.
(A) Prior Disciplinary Offense. Respondent was publicly reprimanded for “disrespectful, accusatory, argumentative, and rude behavior” and directed to attend ethics school in Florida Bar v. Norkin, SC02-854 (Fla.2003) (disposed of by order).
(B) Pattern of Misconduct. The underlying events of the prior disciplinary offense (Fla. Bar v. Norkin, SC02-854) along with the current case demonstrate a pattern of misconduct. In the prior case, Respondent represented a plaintiff in a case before a U.S. District Court. At the conclusion of the trial, the presiding judge found Respondent in civil contempt, citing his disrespectful, accusatory, argumentative, and rude behavior which “[fell] below the professionalism expected of attorneys of the Florida Bar and ... [the] Court.” The judge also stated: “I have observed ... [Respondent] is constantly accusatory in tone and by choice of words. He has been consistently disrespectful to the court, to the lawyers, to the parties, to the witnesses. He has accused counsel of spoliation of the evidence, of illegal conduct, of unprofessional behavior, of lying. He has demeaned the justice system, law enforcement, and his own profession, and my profession. He has refused to accept the court’s rulings. He has constantly argued about rulings once I’ve *88 made them.... He has called not just one attorney incompetent, but almost every attorney that has appeared here either as a witness or as counsel of record, and even his own client’s prior counsel ... He has berated the court....” Due to his unprofessional and hostile behavior, Respondent was suspended from practicing before that court for one year.
Further, the instant referee found that other judges have threatened to hold Respondent in contempt for his unprofessional behavior in the courtroom.
(C) Behavior toward Bar Counsel and other individuals during the disciplinary process. Respondent was not straightforward and cooperative during the instant disciplinary proceedings. At one point he adamantly claimed that Bar Counsel did not notify him that she intended to call Tobin as a witness. An email produced by Bar Counsel showed that Respondent was clearly notified by the Bar that it had decided to call Tobin as a witness.
Next, Respondent testified that Judge Dresnick removed Tobin as a provisional director because “I moved to remove him. And that motion was granted when Judge Dresnick acknowledged that he was not legally appointed.” In stark contrast to Respondent’s testimony, the record of those proceedings revealed the court’s ruling: “So, I’m going to deny your request to discharge him but I’m going to grant Tobin’s request to be discharged.”
Further, in an email dated February 28, 2011, which Respondent sent to Bar Counsel, Respondent stated: “If the Bar files this action against me, it will be met with a countersuit, and against you personally ... I know and am very close friends with some of the most powerful and respected lawyers in this state and all will know of your, and your Chairman’s malicious prosecution of me.”
In addition, in an email dated February 28, 2011, from Respondent to Brooks, Mr. Levy (who is a court reporter), and Bar Counsel, Respondent stated: “I am not paying the standard copy rate, Mr. Levy. If the Bar wants to prevent the full [sic] from public view as the prosecuting agency, and since it chose not to demand them in its investigation, we will move to compel their production as standard copy charges— that is 10 cents per page, no [$]2.75 per page. Had Mr. Brooks not filed a Bar complaint against me, not that it should ever have been made any of your business, I would have no need of these transcripts. They are evidence in an administrative complaint. They should have been demanded by the Bar during its investigation. Only because Mr. Brooks concealed them from the Bar and the Bar did not demand them as it should[; their actions are the reason I do] not have them now. We will seek redress from the court with an emergency motion to be filed tomorrow. I do not believe court reporters have the right to control evidence. [Bar Counsel], again you are aiding Mr. Brooks in obstructing justice just like you did prior to the grievance committee hearing.”
In her report, the referee discussed additional occasions when Norkin behaved in an unprofessional manner during the Bar proceedings. The referee concluded that Norkin is “devoid of insight as to the lack of professionalism he exhibits.”
In mitigation, the referee found the following nine factors: absence of dishonest or selfish motive (the referee stated, “However delusional, Respondent truly believed he was acting on behalf of his client in a zealous and appropriate manner”); personal or emotional problems; coopera *89 tive attitude toward proceedings (the referee noted that although Respondent was unprofessional towards Bar Counsel and a court reporter, he was cooperative with the referee); character or reputation; interim rehabilitation (Respondent was working with a doctor to try to modify his behavior); some remorse; remoteness of prior offense; Respondent contends he tendered apologies to Senior Judge Tobin and Judge Manno Schurr; and physical or mental disability or impairment (depression, attention deficit disorder, anxiety, and physical impairment due to an atrophied optic nerve which can prevent him from identifying nonverbal cues).
Respondent and the Bar challenge the referee’s recommended sanction of a ninety-day suspension. Respondent asserts that his misconduct merits nothing more severe than a public reprimand, while the Bar argues that the appropriate sanction is a one-year suspension with a public reprimand. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
In considering this case, it is crucial to recognize that the Court and The Florida Bar have been advocating professionalism and civility for over twenty years. In 1993 and 1995, The Florida Bar commissioned surveys of Bar members — the members reported that the most serious problems facing Florida lawyers are the lack of professionalism and the lack of ethics. In 1996, the Court issued an administrative order that established The Florida Bar Center for Professionalism. In 2005, The Florida Bar Board of Governors passed a resolution that renamed the center the Henry Latimer Center for Professionalism. In addition, the Court has a Commission on Professionalism and the Bar has a Standing Committee on Professionalism. The Court and the Bar share the “overarching objective of increasing the professionalism aspirations of all lawyers in Florida and ensuring that the practice of law remains a high calling with lawyers invested in not only the service of individual clients but also service to the public good as well.” In re Code for Resolving Professionalism Complaints, 116 So.3d 280, 280 (Fla.2013). “Surveys of both lawyers and judges continue to consistently reflect that professionalism is one of the most significant adverse problems that negatively impacts the practice of law in Florida today.” Id. at 281. Over two-thirds of The Florida Bar members who responded to a 2011 survey agreed that, in recent years, relationships between attorneys have become more adversarial. Further, the “Results of the 2001 Membership Opinion Survey,” at p. 18, found that one-third of responding Bar members reported a lack of ethics or professionalism as one of the “most serious problems facing the legal profession today.” The Court is profoundly concerned with the lack of civility and professionalism demonstrated by some Bar members. The Court has repeatedly ruled that unprofessional behavior is unacceptable. See generally Fla. Bar v. Ratiner, 46 So.3d 35 (Fla.2010); Fla. Bar v. Abramson, 3 So.3d 964 (Fla.2009); Fla. Bar v. Martocci, 791 So.2d 1074 (Fla.2001).
We now turn to Respondent Norkin’s behavior. Despite repeated warnings from judges, Norkin continued to engage *90 in rude and antagonistic behavior. He disrupted court proceedings to such an extent that it was impossible for Judge Dresnick and Judge Manno Schurr to conduct hearings. The transcripts of those hearings are clear on these points. However, before this Court, Norkin is adamant in claiming that his behavior was never disrespectful to the judges. He posits that his conduct might have been “annoying” or “irritating” to the judges, but he asserts that his conduct is acceptable. We strongly disagree. Norkin’s conduct toward the judges violated Bar rules 4-3.5(c), 4-8.2(a), and 4-8.4(a), and he engaged in extremely unprofessional behavior. The Oath of Admission to The Florida Bar requires attorneys to “maintain the respect due to courts of justice and judicial officers.” Further, as provided in the Guidelines for Professional Conduct, a lawyer “always should interact with parties, counsel, witnesses, jurors or prospective jurors, court personnel, and judges with courtesy and civility, and should avoid undignified or discourteous conduct that is degrading to the court or the proceedings.”
Also, Norkin falsely accused a senior judge of criminal conduct. He alleged that Senior Judge Tobin had a “cozy, conspiratorial” relationship with the opposing party and/or opposing counsel. Norkin did not want to pay Tobin’s fees, but instead of seeking appropriate judicial relief, Norkin wrote the letter to Tobin threatening him with litigation, accusing him of being in a conspiratorial relationship, and asserting that Tobin engaged in conduct unbecoming a judge. The referee found that Norkin’s accusations were groundless, and that Norkin knew his accusations were false, but he made them in an effort to berate Tobin into withdrawing his request for payment of his fees. Norkin’s letter to Senior Judge Tobin violated Bar rales 4-8.2(a) and 4-8.4(a). In addition, Norkin’s letter starkly contrasts with the Rules Regulating the Florida Bar which state, in “Preamble: A Lawyer’s Responsibilities,” that a lawyer “should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.” Further, the Preamble states that a lawyer is obligated to maintain “a professional, courteous, and civil attitude toward all persons involved in the legal system.”
Next, Norkin’s relentless unethical and unprofessional behavior toward opposing counsel Brooks violated Bar rule 4 — 8.4(d), which prohibits an attorney from engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage or humiliate others lawyers on any basis. Before this Court, just as he did before the referee, Norkin makes the untenable argument that Brooks deserved the harsh treatment because Brooks’ client and legal tactics caused negative impacts on Nor-kin’s client. Based upon that misguided rationale, Norkin blames Brooks for Nor-kin’s behavior, claiming that Brooks caused him to write the vitriolic e-mails and letters, and to be antagonistic toward the judges. We find that Norkin’s conduct toward Brooks was completely unprofessional, disrespectful, and void of civility. Norkin has fallen far short of the behavior set forth in the Guidelines for Professional Conduct, which provide:
A lawyer should be courteous and civil in all professional dealings with other persons. Lawyers should act in a civil manner regardless of the ill feelings that their clients may have toward others. Lawyers can disagree without being disagreeable. Effective and zealous representation does not require antagonistic or acrimonious behavior. Whether orally or in writing, lawyers should avoid vulgar language, disparaging personal *91 remarks, or acrimony toward other counsel, parties, or witnesses.
Norkin violated every aspect of these specific guidelines. This profession cannot tolerate such behavior.
In this single disciplinary case, Norkin disrupted several court hearings by yelling at judges and exhibiting disrespectful conduct, falsely accused a senior judge of criminal conduct to berate him into withdrawing his request for a fee, and engaged in unceasing efforts to denigrate and humiliate opposing counsel. This is not the first time Norkin has come before the Court due to his unprofessional behavior. As the referee found, Norkin has demonstrated a pattern of misconduct by his behavior in the current case and in the previous case, Florida Bar v. Norkin, 858 So.2d 332 (Fla.2003) (SC02-854, disposed of by order). In the prior case, Norkin was found in civil contempt in a United States District Court for his disrespectful, accusatory, argumentative, and rude behavior which fell far below the professionalism expected of attorneys of The Florida Bar. The federal judge stated that Norkin was constantly accusatory and consistently disrespectful to the court, the lawyers, the parties, and the witnesses. When the case was before this Court as a disciplinary proceeding, Norkin was directed to receive a public reprimand before the Board of Governors and required to attend ethics school. Even though Norkin was the subject of the 2003 disciplinary case, publicly reprimanded, prohibited from appearing before the federal court for one year, and required to attend ethics school, he engaged in the same rude behavior merely five years later in the current case. This is his second appearance before the Court for unprofessional behavior. If he appears before the Court a third time for similar behavior, it will be his third strike for unprofessional behavior and it is likely that more severe sanctions will be appropriate.
In Florida Bar v. Abramson, 3 So.3d 964, 966, 969 (Fla.2009), the respondent was found guilty of violating rules 4-3.5(a), 4-3.5(c), 4-8.2(a), and 4-8.4(d). The referee in the instant case has recommended that Norkin be found guilty of violating these same rules, with the exception of rule 4-3.5(a). Abramson engaged in discourteous and disrespectful behavior toward a judge during the jury selection process in a criminal proceeding. At first, he repeatedly interrupted the judge by demanding that he be heard on a pretrial motion prior to voir dire. The unprofessional and antagonistic behavior culminated when Abramson questioned jurors as to who was at fault, counsel or the judge. Abramson was found guilty of violating rule 4-3.5(c) (a lawyer shall not engage in conduct intended to disrupt a tribunal) and rule 4-8.2(a) (a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, or public legal officer). On review, the Court imposed a ninety-one-day suspension, which would require Abramson to demonstrate rehabilitation. Here, Norkin engaged in tirades and antagonistic behavior on several occasions before Judges Dresnick and Manno Schurr. He also berated Senior Judge Tobin and repeatedly disparaged opposing counsel. In comparison to the facts in Abramson, Norkin’s misconduct and numerous episodes of unprofessional behavior are significantly more egregious. Thus, the referee’s recommended sanction of a ninety-day suspension is unsupported, as is Norkin’s argument that his misdeeds merit only a public reprimand. See also Tobkin, 944 So.2d at 226 (respondent received a ninety-one-day suspension based in part on his unprofessional outburst that was directed toward opposing counsel and *92 staff at a cancer center). Further, due to the extensive unprofessional conduct by some members of The Florida Bar, the Court added language to the Oath of Admission in 2011, subsequent to the decision in Abramson. The new language states: “To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications.”[3] It is likely that Abramson would receive a more severe sanction if his conduct were before the Court today.
In Florida Bar v. Ratiner, 46 So.3d 35, 37 (Fla.2010), the respondent engaged in an unacceptable outburst during a deposition. After opposing counsel placed an evidence sticker on Ratiner’s laptop computer, Ratiner lambasted opposing counsel over the deposition table, tore apart the evidence sticker and flicked it at opposing counsel, and attempted to aggressively move around the table toward opposing counsel. Ratiner, like Norkin, was found guilty of violating rule 4-8.4(d) for engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage or humiliate others lawyers on any basis. Ratiner received a sixty-day suspension, a public reprimand, and a period of probation. Ratiner did not have a disciplinary history. Here, Norkin has a significant disciplinary history for engaging in the same form of misconduct. In rendering discipline, this Court considers the respondent’s disciplinary history and increases the discipline where appropriate for cumulative misconduct. See Fla. Bar v. Bern, 425 So.2d 526, 528 (Fla.1982). Thus, the Court deals more harshly with cumulative misconduct than it does with isolated misconduct. See Fla. Bar v. Heptner, 887 So.2d 1036, 1045 (Fla.2004).
Considering Norkin’s prior similar misconduct, his appalling and unprofessional behavior in the instant proceeding, the aggravating factors, and case law, we conclude that an increased sanction is appropriate. In addition, Norkin’s escalating pattern of misbehavior indicates that a suspension which would require Norkin to demonstrate rehabilitation is necessary. See Fla. Bar v. Knowles, 99 So.3d 918 (Fla.2012) (finding that an escalating pattern of misbehavior warrants a more severe suspension).[4]
Competent, zealous representation is required when working on a case for a client. There are proper types of behavior and methods to utilize when aggressively representing a client. Screaming at judges and opposing counsel, and personally attacking opposing counsel by disparaging him and attempting to humiliate him, are not among the types of acceptable conduct but are entirely unacceptable. One can be professional and aggressive without being obnoxious. Attorneys should focus on the substance of their cases, treating judges and opposing counsel with civility, rather than trying to prevail by being insolent toward judges and purposefully offensive toward opposing counsel. This Court has been discussing professionalism and civili *93 ty for years. We do not tolerate unprofessional and discourteous behavior. We do not take any pleasure in sanctioning Nor-kin, but if we are to have an honored and respected profession, we are required to hold ourselves to a higher standard. Nor-kin has conducted himself in a manner that is the antithesis of what this Court expects from attorneys. By his unprofessional behavior, he has denigrated lawyers in the eyes of the public. Norkin’s violations of the Bar rules and unprofessional behavior merit a two-year suspension and a public reprimand. We direct Norkin to appear personally before this Court to receive the public reprimand. His unprofessional conduct is an embarrassment to all members of The Florida Bar.[5]
CONCLUSION
Accordingly, we approve the referee’s findings of fact and recommendations as to guilt. We disapprove the referee’s recommended sanction of a ninety-day suspension and, instead, impose a two-year suspension. The suspension will be effective thirty days from the filing of this opinion so that Norkin can close out his practice and protect the interests of existing clients. If Norkin notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Norkin shall fully comply with Rule Regulating the Florida Bar 3 — 5.1(h). Further, Norkin shall accept no new business from the date of this opinion until he proves rehabilitation and is reinstated to The Florida Bar.
In addition, Respondent Norkin shall receive a public reprimand that will be administered by his appearance before this Court.
We approve the referee’s recommendation of imposing probation for eighteen months, which shall commence upon Nor-kin’s reinstatement to The Florida Bar. Further, we approve the referee’s recommendation that Respondent undergo a mental health evaluation and participate in any recommended counseling. See Ratiner, 46 So.3d at 41 (respondent required to attend mental health counseling). We approve the referee’s award of costs to the Bar. See R. Regulating Fla. Bar 3-7.6(q)(3).
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Respondent Jeffrey Alan Nor-kin in the amount of $7,970.53, for which sum let execution issue.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. In addition, the referee found Respondent’s versions of other events were implausible. A referee has the authority not to believe a respondent’s testimony. See Fla. Bar v. Gross, 610 So.2d 442, 444 (FIa.1992).

. At the time Norkin sent the repugnant communications, Brooks was approximately 71 years old and dealing with several serious illnesses. With regard to Brooks’ character and reputation as an attorney, the record demonstrates that Brooks graduated from the University of Florida in 1962 with honors. He was awarded a full scholarship to Harvard Law School, from which he graduated in 1965. He served in the United States Army in Korea and Vietnam and was awarded the Bronze Star for meritorious service. Thereafter, he was an Assistant Dade County Attorney and a member of several prominent Miami law firms as a commercial litigator. He was AV rated in Martindale-Hubbell. He had a lengthy and unblemished career as a member of The Florida Bar. This was the first grievance that Brooks filed against a member of The Florida Bar since his admission in 1965.

. Respondent’s misconduct in the Ferguson v. Beem litigation commenced in August 2008, before the Oath was amended.

. Before the referee in the instant disciplinary proceedings, Respondent continued to engage in unprofessional behavior. On several occasions, the referee was forced to admonish Respondent to behave civilly. "COURT: All right. Don’t disparage opposing counsel. I have told you not to do it. Don't do it. We are in a Florida Bar referee hearing. Can you make an argument without disparaging counsel?” Also, during an exchange after Respondent’s testimony, the referee directed Respondent to cease shouting at Bar Counsel and behave respectfully.

. Members of The Florida Bar, law professors, and law students should study the instant case as a glaring example of unprofessional behavior. See also Ratiner, 46 So.3d at 41 n. 4.